Tilghman, C. J.
Robert Smith, the plaintiff in error, was de-defendant below, in both these actions, and both depend on the same principles. On the trial, in the Court of Common Pleas of Franklin county, the counsel for the defendant took two bills of exception to the evidence.
1. The first exception, was to the deposition of James Johnson, taken in the action by Thomas C. Lane. Johnson swore, that the defendant looked at the books of account of Thomas C. Lane, and of Thomas and Elliott Lane, and as he understood, promised to pay interest on his account with both those houses. It is objected, that he ought not to have given evidence of any promise, except to Thomas C. Lane, because it was in his action that the deposition was taken. There is nothing in the objection. It was *82 difficult to divide the defendant’s promise into several parts. He examined the books of both houses, and promised to pay interest on the balance of his accounts with both. It was all done at one time — all in one breath. The jury could not misunderstand the evidence. In the action in which Thomas C. Lane was plaintiff the deposition went to charge the defendant with interest. But, the jury were sworn in both causes, by consent. At all events, the deposition was evidence in* Thomas C. Lane’s action, even though it contained more than was necessary in that cause. But I really think, that after consenting to try both causes together, the defendant did virtually consent, that Johnson’s deposition should be read in both; and to admit it in one, and reject it in the other, would have been a surprise on the plaintiffs.
2. The second exception, was to the rejection of certain books of account, offered in evidence by the defendant. These books were brought forward in order to prove, that a quantity of flour of the defendant’s, ground at the mill of Jlrchibald Irvine, was delivered to the plaintiffs. Several witnesses were examined who worked in the mill, and proved all they'knew about the delivery of the defendant’s flour to the plaintiffs’ wagonners. They proved, also, the nature of the books, and swore that they believed them to be correct. It did not appear, that the miller kept a day-book, in which he entered all the flour that was delivered at the mill, to any person whatever. But there was an account of the delivery of the defendant’s wheat to be ground at the mill, and of his flour, to certain wagonners, said to be in the employ of the plaintiffs. There are many objections to the admission of this evidence. By-long established custom, a book of original entries is evidence, in Pennsylvania, of the sale and delivery of goods. There the custom stops. But I will not say, that there is no other case in which books may be admitted, especially when the witnesses are dead, who could have proved the matters contained in them. That was not the case here — for Humphry Dillon, the book-keeper, was living, and examined in the cause. It is a great objection to these books, that they do not contain a daily entry of the general transactions at the mill. They contain an account of the wheat delivered by the defendant at the mill, and of the flour of the defendant delivered to certain wagonners. But they did not contain an account of all the flour delivered to the plaintiffs’ wagonners. The plaintiffs were in the habit of having a great deal of flour ground at Irvine’s mill. They were merchants in extensive business, and received wheat in payment for their goods, from many of their customers, which was sent to this mill to be manufactured. Supposing, then, these books to be evidence between the miller and the defendant, it does not follow, that they were evidence against the plaintiffs. It was in proof, that the plaintiffs generally drew written orders, when they sent wagons to take flour from Irvine’s mill, although Dillon swears, that he sometimes delivered it on *83 the plaintiffs’ verbal order. It was in proof, too, that a considerable number of the plaintiffs’ orders were filed at the mill, and burnt by Irvine, because they took up too much room in his desk. It would be extremely hard on the plaintiffs, who took the precaution, to draw written orders, that after this voluntary destruction of their orders, they should be charged by the evidence of an account kept between Irvine and the defendant. This has a strong resemblance to the case of Rogers v. Old, (5 Serg. & Rawle, 404,) where a book, kept by the master of a forge, showing the quantity of iron drawn by his workmen, in order to settle with them, in which there was an entry of the names of the persons to whom the iron was sold, and of the wagonners by whom it was sent, was not admitted as evidence against the purchaser; and a principal reason for that decision, was, that the book was not intended for any any other purpose, than to settle the accounts of the workmen. There is another objection to the. books offered in the present instance, — The entries were not always made at the time of the delivery of the flour. Dillon says, that he kept the books, and sometimes, when flour was delivered in his absence, a memorandum was made, and given to him on his return, and from that memorandum he made the entry in the book. I think the wagonners, to whom the flour was said to be delivered, should have been called, or their absence accounted for. They could have proved, whether they were employed by the plaintiffs, and perhaps might have remembered the number of loads. If these books had been offered, corroborated by the oath of the book-keeper, merely to show the quantity of wheat, sent by the defendant to Irvine’s mill, I will not say, whether under this restriction, they might not have been evidence; because the entries were made before any dispute arose between the plaintiffs and the defendant, and they were against the interest of Irvine, as they charged him with so much wheat. But they were offered for a more extensive purpose. It is stated in the bill of exceptions., that they were offered “ to show the number of barrels of flour, belonging to Robert Smith, the defendant, delivered to the plaintiffs.” For this purpose, I am opinion, they were not evidence, and therefore the judgment should be affirmed.
Gibson, J.
It seems to me the mill books ought to have gone to the jury; not as books of original entries, to prove a sale and delivery of flour to the plaintiffs, but as memoranda of particular facts, made at the time, and proved to be correct by the oath of a witness. I do not contend, that the entries were competent to prove any thing further, than the quantity of grain which had been received into the mill, on account of the defendant below. Whether the flour manufactured from it had been delivered to the plaintiffs, would depend on other parts of the evidence. These entries were, at the time, directly in prejudice of the interest of the person who made them; ¡and, if he had been dead, they would unquestionably *84 have been competent by the law of evidence, even as it is beld in England, 1 Phill. Ev. 192—207. The entries of the miller, charging himself with the receipt of wheat, are to his immediate prejudice; and what is the reason, that those entries are evidence of the fact against third persons after his death? Simply, because they afford a fair presumption, that the person who made them would not have admitted himself to be chargeable, if the fact had not been so. I admit, that by the law, as held in England, an entry of this sort is competent, only where the person who made it is dead. But, in point of reason and good sense, why is it not competent when the person who made it is present, and swears to its accuracy, although he may not recollect all the particulars and minute details of the transaction, which are contained in the writing? I go further. Where, for the purpose of perpetuating the evidence of a fact, a witness has made a written statement of it at the time, and can recollect nothing further than that he had accurately reduced the whole transaction to writing, ought not the written statement, thus authenticated by his oath, to be admitted as evidence; and would not the mind of a juror rest more confidently on its truth, than on the frail recollection of man ? I admit the rule of the English law of evidence to be, that a witness must swear only to such facts as are within his recollection, and that a written entry or memorandum can be used only to refresh his memory; and that, after having used it for that purpose, if he cannot positively swear to the truth of the fact stated in it, it can have no operation whatever. But what is this, but to give a preference to human recollection, which is deceitful above all things, to written evidence of the fact, which is unchangeable by time ? — which the law in every other instance abhors. Every lawyer knows how carefully the construction of written instruments is guarded from explanation or contradiction by parol evidence; yet a note, a bond, a deed, a will, or any other written contract or instrument, is essentially nothing else than a record of the transaction, and of the meaning of the parties. It seems to me, the law would have been more consonant to reason, and more practically useful, had it declared the written memorandum to be primary evidence of the fact, and the recollection of the witness who made it, to be only auxiliary. Then, if the reason and good sense of the English rule will not bear it out, why should we sustain it now? Rules of evidence are very unlike rules of property, which operate retrospectively, and cannot be changed without disturbing titles. The establishment of a new rule of evidence, or the alteration of an old one, can operate only prospectively; and hence the law is, in this respect, perpetually accommodating its provisions to the varying condition of the transactions of men.X By the English law, a person who is called to prove what a deceased witness swore, must undertake to repeat his very words, and not merely to swear to their effect. To do this, would require powers of memory which seldom fall to the lot of *85 any one; and the rule, under this restriction, although it might often produce perjury, would be of no practical utility; for no juror of-common discretion, would believe a witness who should undertake to repeat the very words of another, in relating the manner in which any transaction took place, whether simple or complicated. But this absurdity has been exploded by this court; and, in this state, it is unnecessary to profess to use the language of a deceased witness, but only to undertake to state the substance of all he swore, in relation to the particular transaction. Is not the .necessity for an alteration in the English rule quite as apparent in the case before us? Those transactions that are usually the subject of book accounts, are precisely those which, from the minuteness of their details, cannot be retained in the memory of witnesses; and hence the reason why recourse is had to entries in books, as the most convenient, as well as the most certain way of preserving the recollection of them. In the very case before us, the material point of the inquiry was, not whether the defendant had not, during certain years, had his wheat ground at this mill — that was a fact that could as well have been proved by witnesses — but how much had been ground for him in the whole period. To require the *miiler to state this from actual recollection, is to require from human recollection more than it is adequate to perform. But the point is not of the first impression in this court. In Rogers v. Old, 5 Serg. & Rawle, 410, it was held by Justice Duncan and myself, the chief justice being absent, that a book like those in the present case, might form one link in a chain of circumstances, to prove a sale and delivery of the article charged. Now, all that is claimed here, is, that the mill books, corroborated by the oath of the person who made the entries, should form a link in the chain of circumstances, to show how much flour the plaintiff has had of the defendant. The case here is stronger in favour of the competency of entries, than it was in Rogers v. Old, in which that part of the entry, which indicated a delivery to the person whom it was sought to charge in the action as the purchaser, was not in prejudice of the person who made it; and this was the only part, which was material to the purpose of the party who offered it. It would, however, have been clearly competent for the purpose of showing, if the fact had been material, that the quantities of iron stated, had been manufactured for the party by his workmen; that being the direct object for which the book was kept. I therefore, cannot distinguish the principle, on which it is asserted in Rogers v. Old, that the book in that case might, under circumstances, be competent evidence, from that on which it strikes me the mill books ought to have been admitted in the case befoi'e us. The entries are corroborated by the oath of a witness, who swears they were made at the time of the transaction, and correctly made; and I cannot see why they ought not to have been received as a part of his deposition. For these reasons, I am of opinion that the judgment *86 ought to be reversed; but on the other point, I concur with the rest of the court.
Duncan, J.
It is of importance, exactly to understand the nature and character of the books offered by the plaintiff in error, to prove the delivery of certain flour to the defendantsin error, on his account. It was for this purpose they were offered, and not as evidence of Smith’s grain, left in Irvine’s mill.
They were not his own books of entries, but the books of the miller employed by him to grind his wheat. The wheat itself was not sold to the defendants in error, the plaintiffs below; but, when made into flour, was ordered by him, verbally, to be delivered to them. They are not shop books, nor in the nature of entries of wheat or flour sold, nor a tradesman’s books of entries, of work done by him, nor were they daily entries of grain delivered to the miller to grind for his customers, nor of the flour delivered out; but an account of Smith’s flour, delivered to certain wagon-ners, alleged to be in the employment of the Lanes, made for Smith, from his wheat delivered in the mill. The books were not daily entries of the business of the mill, but rather the separate account of Smith’s grain, — the flour, into which it was converted, and to whom delivered. Nor were the entries, all of them made at the time of the delivery of the flour; some of them were from memoranda made in the miller’s absence, and by him transcribed into the books. Generally, too, (but not always,) the flour was delivered on the written orders of the Lanes, which were filed, and afterwards, for some reason, incautiously destroyed by the owner of the mill; incautiously, and not with any improper view. These books were not the common books of Smith, of the plaintiffs and defendant, nor could the miller be considered as the agent of both parties. With the miller, the Lanes had nothing more to do, than receive the flour, and credit Smith for the amount. Their books and their entries, were res inter alios acta, so far as respected charges and discharges. They were memoranda for settlement of grinding, between Smith and the miller, but not the entries of flour sold and delivered; in strictness they were not books charging the Lanes. As shop books, or tradesmen’s books, they. are not to be considered, which are evidence in two cases only; namely, where goods are sold, or work done.
Under which denomination are the entries to be considered, and under what circumstances, and for what purpose would such books he evidence ?
They are memoranda made by a person in the ordinary course of his business, of acts which his duty requires him to. do for others, and at least would be proof, in some cases, after the death of the party who made the entries. 8 Wheat. 826: As to prove the time of birth entered by a midwife, the time of delivery, in a book kept for that purpose, charging for the services, and ere- *87 diting them as paid; or entries of a scrivener, in' a regular book kept by him for that purpose, would be evidence of the time when a conveyance was drawn by him, and of other incidental matters; but I am not aware of any case, in which an entry made by persons in the ordinary course of business, is competent to charge a third person, as for goods sold and delivered. These books are only received ex necessitate. It is a species of hearsay evidence; but the private books of individuals are never received to charge a person, unless they are the original books of entries of the person who made the charge, or his clerks, against the person who is charged, as for goods sold and delivered; if kept for any other purpose, though there be a custom to treat such books as books of original entries, they are not evidence; as, in Sterrett v. Bull, 1 Binn. 234, a receipt for goods, written by a clerk, in a book sworn to be a book of original entries, containing similar receipts, and signed by the person to whom the goods were delivered, was not evidence; nor is a book kept by a forge master, for the purpose of settling with the workmen, in which are entered the names, the quantity of iron delivered, and sometimes the price, such a book of original entries, as to charge a man as a purchaser, although it also contains the names of purchasers. Rogers v. Old, 5 Serg. & Rawle, 404. Now, the book of the forge master there, and of the miller here, were books exactly of the same class. The miller’s book was kept for the purpose of settling with his customer, who in this instance was Robert Smith, and it contained the quantity of flour delivered. As that book was kept for the purpose of settling with the workmen, and contained the quantity of iron, and to whom delivered, it came much nearer to a shop book, or tradesman’s book, because it in some cases stated the purchaser. So, what I think was a much stronger case, a book kept by an agent, containing copies of invoices, is not evidence of the sale of goods sold and delivered. Cooper v. Morrel, 4 Yeates, 341. The books of the messenger of a bank, who is dead, in which,, in the course of his duty, he entered memoranda of demands, and notices of notes left in the bank for collection, is evidence. 15 Mass. 381. But, if he is living, he must be called, and may make use of these entries to refresh his memory; and if he then can undertake to swear to the facts, from memory refreshed by, and depending on the entries, he is competent to prove the fact; but the book does not go as evidence to the jury; the witness uses them to refresh his memory, as to times, names, and quantities; and even entries in a banker’s book, not communicated to customers, is not evidence. 19 Ves. 25. And so this court decided, a few weeks since, in The Philadelphia Bank v. Officer’s Executors.* Here the miller was living; the clerks who made the entries were living, and examined as witnesses; the plaintiff in error had the full benefit of their testimony; they could have refreshed *88 their memories from these books, and if their memories, thus refreshed, had enabled them to swear to the delivery of the flourto the wagonners of Ihé Lanes, and to the order of the Lanes, written or verbal, they would have been received to prove it. Either they could, or they could not; if they could not, then clearly, they could be no evidence to charge a third person, for goods sold and delivered by a third person; if they could not undertake to do this, ii would be too much to require the jury to find it; and, if they could, there would be no necessity to admit the books. It would be a dangerous kind of evidence, and every man who had work done at any mill, would be left in the power of the miller, to discharge himself from his responsibility to one customer, by entering his flour delivered to another. It would be giving too much authority to any book, however accurately kept. But where some of the entries, and which of them are not stated, are made on the relation and from the memoranda of others, whose oath we have not; and where it is not the general entries in a day book, but particular entries, for particular purposes; and where, in addition to this, in the general mode of conducting the business, though in particular instances there were deviations, it was by written orders, and where these orders, however innocently, have been destroyed by the agent of the plaintiff in error, the person employed by him and who is therefore accountable to him, and the wagoners to whom the flour was delivered are not called on to prove the delivery, to admit a book, under such circumstances, would be a departure from the rules of evidence; introducing a kind of hearsay evidence, destructive of all security in the transactions between man and man. I am therefore of opinion, that the books were properly rejected. On the other exception, the chief justice has been so full, that I deem it unnecessary to add any thing, as I coincide in the opinion, that the deposition of Johnson was properly received.
Judgment affirmed.

 Ante, 49.