The opinion of the court was delivered by

Duxcan, J.

The real matter in controversy between the parties, was on the construction of the instrument declared on, as the joint obligation of the plaintiffs in error, and its binding force on them, after the material alteration, by the erasure of the name of Robert Haslett, one of the joint obligors.
The other questions are subordinate; but, as the case goes back, and all the points may be relevant, it is made the duty of this court to give an opinion on all.
The first error assigned, is to the jurisdiction of the court. The presiding Judge of the Court of Common Pleas thought proper to certify and return this case for trial to the special court, and the parties went on to trial without exception, as on a case properly certified. The requisite certificate has been given to confer jurisdiction, and' the course of the argument shows the propriety of the certificate; for even the' counsel of the plaintiffs in error draw different conclusions, as to the interest of the President. While one admits that he had no interest, and was a competent witness, the other contends, totis viribus, that he was interested, and therefore improperly received; and it is one of the errors assigned, and which this court is now' to decide, that he was incompetent as a witness. In a ease so circumstanced, every unprejudiced man will admit,' that the judge, even though, in his private judgment, he might suppose he had no interest, yet he took the safest and justest ground, in certifying the cause. It was a case of doubt and difficulty: — the judge has certified all the facts necessary to give the special court jurisdiction, and we are not, in a court of error, to say he has improperly certified, when all parties agreed, without objection to the jurisdiction, to go on to trial; even though we decide, that, as the record stands, he was a competent witness.
The second error is, that the-cause was not.put to issue, there being no replication to the plea of non ést factum, and no rejoinder to the plaintiffs’ assignment of breaches. After a trial ort the merits, in any case, (I speak here, only my own opinion,) where the party has had the full benefit of his defence to the action, I would feel a strong disposition to maintain the verdict. I have before expressed this opinion in Jordan v. Cooper, 3 Serg. & Rawle, 583. It has been so settled in Massachusetts. 9 Mass. Rep. 552. And, in New York, in Snyder v. Snyder, 4 Cowen, 394, the court suffered the replication to be added by way of amendment, nunc pro tunc, where the plaintiff had neglected- to *420 reply to the statute of limitations. The courts in Westminster Hall, have nearly done the same thing. But, without now deciding the general question, all the members of this court, who heard the argument, are of opinion, that, on inspection'of this record, i£ shows an agreement of the parties to go to trial, waiving the impropriety of the pleading on the record, as it stood; for on the eve of the trial the defendants pleaded performance of covenants, and received, instead of a regular assignment of breaches, an informal specification. The parties agree to go on to trial “on a specification of charges relating to' the suit of The Bank of Washington, Pennsylvania, v. John Barrington and sureties.” After this, it would reflect little credit on the administration of justice, to set aside a verdict in which the court and j'ury had occupied many days; and when it appears that there was a minute investigation of every matter which the plaintiffs in error suggested,as a defence; where they had the benefit of all the defence and evidence, as well on the plea of non est factum, as on each breach stated in the specification.
The third, fifth, and twelfth specifications of error, all relate to one great question of fact,---the question whether, after the erasure of the name of Robert Haslett, the bond became the joint obligation of the plaintiffs in error and Thomas Acheson; or whether that act did not render it void. I have reserved. this question, to be considered in the last view to be taken of this ease..
The fourth error assigned, is the construction of the condition of the bond; — “That John Barrington, the cashier, shall well and truly perform the duties of cashier of the bank aforesaid, to the best of his abilities.” .It has been contended, that, “to the best of his abilities,” restrains the guarantee to acts of infidelity and dishonesty, and that they were so intended,‘not being used in the general banking law; and therefore if the act be done ignorantly, but not dishonestly, however injurious it may be to the institution, however contrary to the official duties of the cashier, still, if there be no corrupt motive, the securities are not liable. While I admit the ingenuity, I cannot agree to the solidity of the argument. The covenant is, that the cashier will discharge the duties of his appointment; that is, with competent skill and abilities. A man who accepts an office or trust, of any kind, contracts that he will exercise it with competent skill and ability; and his sureties, who are bound that he will execute it according to his ability, warrant for the performance of this contract of the officer. A man cannot go beyond his abilities; but, in appointments of this kind, it is an undertaking that the officer will act according to the duties of his station; and if he transcends the known powers of a cashier; by changing the securities of the bank, without their knowledge, and loss has accrued by the abuse of his trust, the loss falls within the words of the condition, and the sureties are re *421 sponsible for the amount of such actual loss. Of the charge of the court, in this particular, the plaintiffs in error have not just cause of complaint.
But I am of opinion, that they have sustained the seventh specification of error. Barrington’s sureties were not by his misconduct, by his change of securities, by his acceptance of Pentecost’s judgment, and agreement to suspend proceedings on that judgment, converted into the securities of Pentecost: they are only responsible for the damages which probably resulted from the change; and then the bank should have shown that they could have recovered the whole, or part of the debt, by evidence of the circumstances of Pentecost and his endorsers. 2 Wils. 328. Whether there was sufficient to pay in whole or in part, if the security had remained unchanged, should have been left to the jury. It was a question of quantum damnificatus; not a commercial question, nor an action for a tort committed by the securities, but indemnity for a loss proved to have been sustained; an open question of actual pecuniary loss; not a closed one, where the measure of damages was the amount of the debt, but one for the consideration of the jury; — what has been the injury sustained; what has the bank lo'st by this unauthorized act of the agent? If the security was good, then the bank has lost the whole debt by the change. If partially good, then the amount of the sum, which probably would have been recovered from them. If nothing could have been recovered from them, then only nominal damages against the sureties. The damages cannot be in the nature of punishment, or penalty. Now, under this charge of the court, there might have been recovered from the sureties more than the bank could have recovered from their debtors. Place the bank in statu quo, the damages would be compensatory: — go beyond this, and they are vindictive, and vindictive damages are never-given against sureties. .
The eighth assignment of error, is in admitting evidence of the 'Board of Directors of the 31st of August, 1814. As this cause goes back, it is proper to state under what' circumstances the entry would be evidence. The evidence of George Morgan, being received to show the actual appointment of Barrington by a Board of Directors, and the written memorandum of that appointment, if, on a proper search, that paper cannot be found, proof must be made of its contents, and the direction given to Barrington to enter it on the minute books, leaving a blank for Mr. Morgan to insert the name of the cashier. But if no evidence was given of anymemorandum in writing, nor trace of entry to be found of the appointment, evidence would be admissible to show that Barrington continually acted as' cashier of the Bank. The books of the bank were all in his handwriting, and kept by him; all bank notes were attested by him; every act which would fall within the functions of a cashier being proved to have been *422 done by him; the bond, the deed of the defendants, stating him to be the cashier; all this would be satisfactory evidence of his appointment as,cashier; and though the entry of the 31st of August, 1814, might not be evidence per se, yet, connected with the other evidence, it would be evidence of his appointment; and all this would satisfy even an allegation that he was duly appointed.
If the bills of exceptions on which the ninth and tenth errors are assigned, had stated that Dr. 'Murdoch and Judge.Baird had béen original subscribers to the bank, it would have been a roost serious question, whether, as the bank had forfeited its charter, and was unable, from the funds paid in, to pay its. debts, they would have been competent witnesses to increase a fund, to lessen the debts that otherwise might fall on them, in proportion to their original subscription; for only seventeen and a half per cent, has been paid in, of fifty per cent, subscribed. But this is not so stated, — it may be so, or it may not be so. As the cause goes. back, and is a very interesting one, it is desirable it should go back without prejudicated opinions, on matters, which, from the state of the record, it is not made the duty of the court to decide. On another trial, if such be the fact, it should be so stated; but the fact is not apparent on the record, that these gentleman were original subscribers. They may be so, or only assignees. If assignees only, they would not b.e liable further than as stockholders. The court does not perceive any interest Judge Baird has in the event of the trial. The cashier had discharged him from so much debt to the bank as his stock amounted to. I cannot see that the securities could recover from him in any form of action,. if judgment was rendered against them for this item in the specification. .
The eleventh exception respects the entry of a resolution of certain directors, but not a competent number to constitute a Board, of the 19th of April, 1815, in the book of minutes, in the handwriting of the cashier: “ Resolved, that the name of Robert Has-lett be struck off the said bond of security for the cashier, provided the other securities agree thereto.” I cannot say, that the evidence was not admissible for any purpose. Had it been offered for the purpose of showing a consent by the plaintiffs in error to the alteration, it should have been rejected; but it is some evidence;' it is evidence that the Board was in possession of the bond, with all the names on it, in April, 1815. It proves that the bank then held the bond unaltered, and that the obligors had not then consented that the name of Haslett should be struck out, and be no longer bound, and they continue to be bound.
We come, in conclusion, to the consideration of the third, fifth, sixth, and twelfth exceptions. These relate all to the great question on the merits; the erasure of Haslett’s name, and whether, from the evidence', he became loosened from this joint obligation, while the responsibility of the others was Pot only continued, but *423 increased. To them the alteration was most material. While it increased their responsibility, it changed the very nature of their obligation. Instead of being the joint bond of five, it became the joint bond of four. It ceased to be the same joint contract. Its identity and individuality were destroyed. The plea of non est ■factum puts in issue the execution of the bond, and its continuance, as the deed of all the joint parties, to the time of the plea. Formerly the judges decided on profert or view of the deed, whether it was void by reason of interlineation or erasure; but when deeds became voluminous and multiplied, they found it inconvenient to decide on demurrer, and referred it tor the jury. It is now a fact for the jury to decide, whether it is the same identical contract declared on. 10 Co. 92. Bull. N. P. 267. As the law formerly stood, the destruction of the whole deed, or its loss,' amounted at law to a destruction or loss of the debt. If mice gnawed off the seal, the obligation was extinct. This was with some struggle got over in the courts of law; for a man may now declare without profert, Stating the deed to have been lost by time or accident. A spoliation of a part of the deed falls within the same reason. It is unnecessary critically to examine the ancient doctrine; it is sufficient to say, that the same rigour does not prevail as to the alteration of deeds. But, while the same rigour does not prevail, still the law views the alteration with a jealous eye,' and requires evidence by the obligee, for the burthen of proof is on him, that, if the alteration be material, it was done ioith-out the consent of the obligee; or, if done with his consent, the consent of all the parties in interest should be proved. J1 rule of common sense and- justice now obtains, that an alteration in a material part, against the consent of the obligor, does not ovoid the instrument, any more than its total destruction would. Jackson v. Martin. 15 Johns. 295. 2 Evans’s Po-thier, 180, 181. And it appears well settled in the Supreme Court of the United States, Speeker and others v. The United States, 9 Cranch, 26, that the name-of an obligor may be rased from a bond, and a new obligor by consent of all parties added, without making the bond void, and such •consent. may be proved by parol. So that the execution and delivery of the bond being proved, and the bank making it part of the case, that in Jlpril, 1815, the name of Robert Haslett was on the bond, by bringing the action against the others, omitting his name, admit that the alteration was made with their consent, and was not a fraudulent alteration of the name of the name, of Haslett; for, if fraudulent and without their consent, then, on the principles stated, it continued the joint bond of all, and the action should have been brought against all, and they could not have dropped the name of Haslett; and if Haslett continued bound, which he did.unless the bank released him, then it is not the joint obligation of these individuals, but their joint obligation with Haslett. It is not the *424 same joint contract, but a different one. The only question then would be, Did all the plaintiffs in error, with Thomas Jlcheson, consent to this alteration? Is there satisfactory evidence of this fact? I would not require a solemn re-execution and re-delivery of the bond. The consent of all might' be proved by parol; but then it should be proved, and not conjectured. It was not a ques-. tion to be inquired into by the jury, whether HasleWs name had been fraudulently erased or not; though it would have been, had he been sued as a joint obligor; for that which is admitted by the pleadings need not be proved. It cannot be denied by the bank, that the alteration was made with their consent. Their allegation is on the joint bond of- four. Was that the view of the case presented to the jury, or were they not instructed by the court to settle two facts, and, if either of them was found against the plaintiffs in error, then the verdict was to be for the bank? In either alternative, the securities-were bound. The first was, — Was the alteration made fraudulently, without the consent of the bank? and, if the jury so found, then, whether the securities consented or not, still they were bound. The other question was, Did they consent? This is the plain meaning of the charge. If it was not, then it was so obscurely expressed by the court, that it would tend to mislead the jury. The judge who delivered the charge, alway's expresses himself with perspicuity: — “ It does not,” says the opinion, “ appear very clearly to whom the bond was originally delivered. It might have been kept among the papers of the bank, and was taken from them by Judge Baied, President of the institution, and delivered by him, after his resignation, to Mr. Brice, a director. Had this paper come into the hands of Judge Baied, free from erasure, then it would have been incumbent on the bank to satisfy the jury, as to the person by whose direction it was made, and if by consent of these obligors, or'either of them, then to show that fact to the jury.” But as the bank by this action did .admit that HasleWs name was withdrawn by their Consent, then whoever had the custody of the bond, it was incumbent on the bank to prove that it was by consent of all, and not by consent of either; for if all-did not consent, then it was not the joint obligation of all — i,t was not their deed.
The evidence of this consent the court states to be slight, but the concluding sentence of the charge, the last words to the jury, put it, not on the consent of the obligors, but on the fraudulent alteration of the bond, without the consent of the obligors, by the cashier. “ If it was done without the consent of the Board,” says the court, “itwas a fraudulent act, and his co-obligors are not discharged.” What would be the consequence of that? If the co-obligors were bound, Haslett continued bound; yet it was expressly admitted in the argument, as well" as conceded by the form of action, that Haslett was released. The action is founded on that assumption, and all,the argument on both sides proceeded on *425 this principle. This cannot be right; for on a recovery in this action against the plaintiffs in error, they could have no contribution against Haslett; and, taking the whole charge together, any jury must conclude that they were instructed, that if the alteration was made by Barrington, without the consent of the bank, it was fraudulent against all but Haslett, whether the obligors consented or not; whereas, if it was fraudulent against the bank, the bond retained all its original force, and bound all. If the bond was good as to one, it was good as to all. By the' bank’s ratification of the erasure of Haslett’s name, they released him; and the obligation being a joint one, the release of one was the release of all; for, if it was not so, then an additional burthen would be cast on the plaintiffs in error, without their consent. This would be manifestly unjust. They have a right to say, “ Non in liase vincula venimus. Five were bound jointly, and, without our .consent, you' attempt to make it the joint deed of four. It is not the individual bond we executed.” For, in all cases where the obligation was on the deed of the parties, and after, and before action brought, it becomes no deed, either by erasure or addition, the defendant must satisfactorily prove, non est factum. The question is, what it is at the present time ? 5 Rep. 119. Two seal a deed; the seal of one of them is broken off. He shall say, non est factum, and this shall avoid the obligation. Br., Obligation, pl. 93, 3 H 7. And where the alteration is injurious to one of the obligors, the law is reasonable in requiring evidence,, not amounting, I admit, to re-execution of the bond, (yet that was the opinion of the learned judge in Speeker’s case;) not requiring all that solemnity, which its first execution did, yet requiring evidence of á consent by all to the alteration, and an agreement by those whose responsibility was. to be increased, to remain bound alone, as if the name of one had not been erased; as if he had never been bound; a quasi re-execution of the bond, by their agreement to continue bound.
I am therefore of opinion, there was error in this part of the charge, and that, for all the reasons given, the judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo ¿warded.