## Hocker *against* Jamison.
## Same *against* Same.

If the figure 4 in a promissory note, originally dated in 1834, be altered by the holder without the consent or knowledge of the maker into a 6, it avoids the note.

If a suit on a note endorsed by the payee in blank, be brought in the name of one who knew nothing of the suit till after it was brought, had no claim for the money, and had no interest in it, the jury may be directed to find a verdict for the defendant on that ground only.

If a subsequent suit be brought in the name of the real holder, such former verdict and judgment are not a bar to his recovery on the note.

It may not be error for the court below to admit or reject evidence, where its pertinency or materiality does not distinctly appear to a court of error.

Where the merits were tried in a former suit, but the verdict was against the plaintiff solely on the ground of his incapacity to recover for want of interest in the note sued upon, the evidence given by witnesses then examined is admissible, if they are out of the state.

It is error in a suit on a promissory note or bond in which the signature of the defendant is disputed on the ground of forgery, and an attorney of the court is a witness for the plaintiff, if the court charge the jury that such witness "is charged with high crimes — crimes, if true, that would drive him from the bar and disgrace him for ever," that not being the issue trying, nor necessarily connected with its determination.

ERROR to the Common Pleas of *Montgomery* county, in which Samuel Jamison brought two actions, one of *assumpsit*, the other an action of debt, against John Hocker and Dr George Martin, the plaintiffs in error, administrators, &c. of John Masterson deceased. The facts of the case are sufficiently stated in the opinion of the court.

*Powell* and *J. Fox*, for plaintiffs in error.
*Freedley* and *Haley*, for defendant in error.

The opinion of the Court was delivered by
Huston, J. — These causes were tried together in the Common Pleas of Montgomery, and argued together here. The testimony was voluminous and contradictory. As we have not to decide on the merits or on the truth of the finding, I shall only state so much of the case as will be necessary to understand the points alleged, as they arise, and as we are called on to decide.

The first suit was on a promissory note, purporting to be made by John Masterson to Charles F. Redmond, as follows:

" *Plymouth, August* 24, 1836.

" Thirty days after date I promise to pay Charles F. Redmond or bearer, $2850, without defalcation, for value received.

(Signed)     " John Masterson."

The allegation of the defendants was, that the note, as originally made, was dated in 1834, and that the figure 4, by erasing part, and by a pen, had been made into 6. The jury, on inspection of the note, and on the testimony, are to judge of this. As the note was passed off by Redmond in 1836, this change, if made *without* the consent or knowledge of Masterson, was such an alteration as avoided the note — was a forgery; it gave it the appearance of a note negotiated long after it was due.

The second suit was on a single bill, for $2500, dated 18th November 1836, payable 1st April then next, to Samuel Jamison, with power of attorney to confess judgment, written and witnessed by D. H. Mulvany. The signature to this (and perhaps of the note) was alleged not to be the writing of John Masterson — in other words, to be a forgery.

John Masterson died in the winter after the date of these papers. In the autumn of 1837 the note was taken to Philadelphia, and sued in the name of Charles T. Parmentier. At the trial of the cause, some testimony was given as to Parmentier disclaiming the suit there. He stated, on oath, that he never brought or ordered the suit; knew nothing of it until after it was brought; did not claim the money, nor had any interest in the note. But the whole evidence had been heard, and the Judge very properly told the jury, that if they found C. Parmentier had no claim to the note, and no interest in the note, they would find for defendant; if they found on this point, to state so in their verdict; if they did not find on this ground, then they were to inquire whether the note was a forgery. The jury found for the defendants on the first ground. This record was pleaded as a bar to the present suit, which was brought in Montgomery county. The court said, although it was asserted at the trial that Jamison was the real plaintiff, the suit being in the name of Parmentier, and the cause put to the jury on his right to recover, and the jury having found specially, that they found their verdict on that point, it is not a bar, in law, to the plaintiff's right to maintain this action.

This was assigned as error; but the court was right; the finding of the jury was not on the same point. It was not on the liability of Masterson's estate to pay the note, but on the right of anybody to sue on it and recover in the name of Parmentier, and recover without his knowledge, and against his consent. Though not in form a plea to the personal disability of the plaintiff Parmentier, yet, in fact, the decision was on that; the finding was on that solely. Although evidence on both sides was given on the merits of the whole case, yet neither jury nor court passed on the whole case; and this appears by the record of the trial in the District Court.

[Hocker v. Jamison.]

Very soon after the defendants began their testimony, they called Daniel Bickel to prove that after the death of Masterson, and when appraising his property, C. F. Redmond stated that Masterson's estate owed him nothing, or only a small sum, of which he would not make any charge. This was objected to and rejected, and exception taken. I presume it was rejected because irrelevant; and we cannot see its bearing on this cause. It is said that if a conspiracy or combination is proved, the declarations of any one concerned may be given in evidence. This is true; but the declarations must relate to the matter trying. Whether, in any stage of the cause, this testimony would be pertinent, we do not say. It is not our business to say what a jury may infer from much complicated and contradictory evidence. In some cases it may not be error to admit or reject what is offered — its materiality is not seen, or is seen, and yet it has no effect on the jury.

The next bill of exceptions presents more difficulty. I have stated that although the cause in the District Court was decided on the right of Parmentier to sue, yet all testimony as to the merits of the case was given on both sides; it was not known until the charge that the jury would not be called on to decide on the merits. While the cause was in the District Court, but two or three terms before it was reached, on some conversation about it, Mr Mulvany obtained the note from the counsel and brought it among the people outside the bar : according to the testimony of some witnesses he (Mulvany) then said it was a forgery. Afterwards, when the cause came on to be tried in the District Court, Mulvany was offered as a witness for the plaintiff, and objected to. He executed a release, and the costs were paid and he was examined; and his testimony went to prove the whole of the plaintiff's case on the note, which alone was then trying. To impugn his testimony, witnesses were called and sworn to prove his declarations, as above stated, that it was a forgery. On the trial of this case in Montgomery county, the defendants offered Samuel Chew, Esq., who was counsel for defendants in the suit in the District Court, in which Parmentier was plaintiff against these defendants on the note now in question, the record of which suit is in evidence in this trial, to prove what John Zerns and George Zerns swore on that trial—J. and G. Zerns being now out of the state. This evidence was objected to and rejected, and exception taken. It was conceded here that the testimony of John and of George Zerns went to prove the declarations of Mulvany at the time he procured and showed the note, and, as is alleged, stated that it was a forgery. We do not know why this testimony was rejected, but as Mr Chew was called and examined as to what another witness (Mulvany) said on that trial, we must suppose the objection was not to him or his notes.

It has been long settled that what a witness swore, or a depo-

sition taken, at trial may be given in evidence at a subsequent trial between the same parties or privies, if the witness is dead at the second trial, or has removed out of the state. *Magill* v. *Kauff- man,* (4 *Serg. & Rawle* 319). Some difficulty has existed as to how this proof is to be made. In 17 *Serg. & Rawle* 409–10–11, this matter came before this court, and was fully considered, and it has been supposed that case settled the law in this state upon a full re- view of all our own cases; but it is supposed the judge went on the ground that the former case was not between the same parties, as Parmentier was plaintiff in that case; and that court decided rightly, the verdict and judgment there were no bar to this action. It is apprehended, however, that is not conclusive; for if after the testimony and pleadings had closed, the plaintiff had become non- suit, or, after verdict, the judgment had been arrested, still what a witness swore at that trial might, if the witness was dead or out of the state, be proved at a second trial. That verdict and judgment were no bar to this suit, because the merits were not passed on by the jury or court. But what a witness said, when examined in open court in the presence of the plaintiff and defendant, with cross-examination, or liberty to cross-examine, is proved at a se- cond trial, because the matter in issue at the first and second trial is the same, and the death or removal of this witness shall not prejudice the rights of the party. At the time these witnesses were examined, the merits of the case were under discussion. Their testimony had no relation to the right of suing in the name of Parmentier, but to the credit and credibility of the witness who proved the plaintiff's whole case; and there it was strenuously argued that Jamison was the real plaintiff. If it is said the former trial was on the note alone, but in this case the jury were sworn as to the note and single bill also, the answer is, they are to give separate verdicts in each. We have, however, a case, if not di- rectly in point, which settles the principle. Two actions against the same defendant, the one by A alone, the other by A & B; by consent they were tried together. It was held that a deposition taken in the suit in which A alone was plaintiff, might be read at the trial. *Smith* v. *Lane,* (12 *Serg. & Rawle* 80). If necessary, the court will instruct the jury to which issue the evidence ap- plies. We think there was error in rejecting this evidence.

There are matters in the charge which are assigned as error. After some very proper remarks, the court say, " you have heard Mr Mulvany's evidence; he is an attorney of the court, with no inferior knowledge of the law. He is charged with high crimes— crimes, if true, that would drive him from the bar and disgrace him for ever; and the parties have put their case principally on his credit;" and goes on to state certain rules as to probability of story, as to corroborating circumstances, all very correct. But we all think the judge went a little too far in the sentence quoted. The issue trying was between the plaintiff and the defendant.

This was a little like putting it to the jury to try the witness, Mulvany. Now, it may be that the jury may find a writing to be a forgery, and yet they would not, and could not find the witness guilty of either perjury or forgery. Let us see as to the note. Mulvany himself testified, " I remember he (Redmond) told me a little stroke which was across the figure 6 he had scratched out, it made it look like a 4. After that he told me he would pay the note himself. *I saw where the line went across the figure 6 the first time he brought me the note, and I think I made some little remark about it ; the next time it was as it now is, and he said he had scratched it out.*" There was then alteration in the appearance of the note.˙ If the note was really dated 1834, and payable thirty days after date, in 1836 it was so much over-due as to put whoever received it on his guard, and to let in the maker of the note to a defence against whoever took it in 1836. *We* cannot tell, though, the jury must endeavour to find what the extent of this alteration was, whether it was a 4 or a 6, or so made that it might be either 1834 or 1836. In 2 *Russel on Crimes*, 318 *or* 296 *of last edition*, it is said any alteration, even of a letter, in an instrument, *whereby a new operation is given to it*, will amount to a forgery; and 1 *Hawk. P. 6, c. 70, sec. 2*, says an alteration to make a man's own act appear to have been done at a time when it was not done, is a forgery. If, then, by inspection most carefully made, or from evidence, the jury should find an alteration to have been made, which is admitted to have been noticed by Mr Mulvany, and thus avoided the note, the only direct imputation on him would be, a mistake in law in not telling the man he must have the note written over again without erasure, or a mistake in not telling Jamison not to take a note, the date of which was written on an erasure. Now a mistake, such as this, would not have the effect on the witness stated by the judge. Without intending at all to limit the judge in his explanations of the nature of evidence, and the rules by which it is to be estimated, we think he went a little too far in putting it to the jury on the effect it might have on a witness, if found one way or the other. The jury are to find according to the truth and justice of the case, though their verdict may effect the ruin of one of the parties, or leave a stain on the character of some of the witnesses.

It is out of the line of our duty to intimate, and let it be understood we do not intimate any opinion on the merits of the case, or how far the finding of one issue may or may not affect the other issue.

Judgment reversed, and a *venire de novo* awarded.