ARNOLD, BARBOUR & HARTSHORN v. JOHN C. JONES.

Where a promissory note, made payable to a partnership under one name, was endorsed by surety and afterwards altered by the maker and payee, without the knowledge of the surety, so as to be payable to the same partnership under another name : *held*, in an action by the payee against the surety, that the alteration was immaterial and did not affect the validity of the note.

ASSUMPSIT against the defendant as surety upon the following note : " Providence, January 1st, 1851. For value received we promise to pay Arnold, Barbour & Hartshorn, (the *Providence Steam Pipe and Gas Company*,) or order, in six months after date, one hundred and sixty-one dollars and eighteen cents." Signed by Reisner & Caswell. In this note the words in brackets were crossed out and the preceding words, " Arnold, Barbour & Hartshorn" inserted above them. It appeared at the trial, that the plaintiffs were a partnership, established October. 1, 1850, and dealt in Steam and Gas Pipes, and carried on their business, made out their bills and gave receipts, sometimes in the name of the Providence Steam Pipe and Gas Company, and sometimes in the name of Arnold, Barbour & Hartshorn, though oftener in the former name than the latter, but carried on no other business than that above referred to in either name and always regarded either name as the same. The note was signed by Charles N. Caswell, one of the partners of the firm of Reisner & Caswell, for the firm, for stock purchased of the plaintiffs, payable to the Providence Steam Pipe and Gas Company. After it was so written, the plaintiffs requested said Cas-

well to procure an endorser and he obtained the endorsement of the defendant. Caswell then took the note to the plaintiffs, who requested him to alter the note by erasing the words " The Providence Steam Pipe and Gas Company," and inserting " Arnold, Barbour & Hartshorn," and he did as requested, without the knowledge of the defendant. The note, as originally written, was in the hand-writing of the defendant. Caswell testified that, at the execution of the note, neither he nor the defendant knew the names of the persons constituting the Providence Steam Pipe and Gas Company.

The counsel for the defendant objected to the admission of evidence to show that the plaintiffs were co-partners, at the date of the note, doing business as well under the name of Arnold, Barbour & Hartshorn, as under that of the Providence Steam Pipe and Gas Company, and this objection was overruled. The counsel then moved that the plaintiffs should be non-suited, on the ground that the note was void by reason of the alteration, which motion was denied. He also requested the Court to charge the jury, that " the note, declared on as payable to Arnold, Barbour & Hartshorn, was not the note made by the defendant payable to ' The Providence Steam Pipe and Gas Company,' but was another and a different note, by reason of the alteration and was therefore wholly vitiated and void as regards the defendant," and this request the Court likewise refused to grant. The jury found for the plaintiffs and the defendant moved for a new trial upon exceptions to the rulings.

*Currey* for the defendant contended. That the law would not permit an act to be done, the reasonable intendment of which was fraudulent, without annexing to it the penalty of a fraudulent motive, and where an alteration was made in contract, which the law presumed to be fraudulent, the motive of the alteration could not be ex-

plained, it being the policy of the law to preserve the identity of written contracts and therefore to avoid them for any alteration by which they were affected in this respect. *Master* v. *Miller*, (4 Term. 320. Smith's Leading cases, 488.) *Jackson* v. *Malin*, (15 Johns. 293.)— *Stephens* v. *Graham*, (7 Serg. & Rawle, 505. Chitty on Bills, 204.) That being a surety, the defendant was liable on his undertaking only in the exact form in which he undertook and, however technical or onerous that form might have been, it must be complied with or he would not be bound. The note may have been less easy to discount in one form than in the other and an alteration made to facilitate the negotiation would release the surety. As surety he would expect notice if the note was not paid at maturity and was consequently entitled to have it remain in the same form in which it was given, in order that there might be no danger of mistake about the note when such notice came; for if through any mistake he should suffer the note to lie over, he would thereby lose credit and expose his property to attachment or his person to arrest. *Cowie* v. *Halsall*, (4 B. & A. 197.)

*Jenckes* for the plaintiffs.

HAILE, J., delivered the opinion of the Court.

Whether this motion for a new trial shall be granted or not, depends mainly on the legal decision of the question, whether the alteration of this note, as described in said motion, made under the circumstances found at the trial, is such a material alteration as would in law render said note void.

It may be considered as settled law, that any alteration in any material part of a deed or other instrument under

seal by the plaintiff or with his privity, after its delivery and without the consent of the person who executed it, will render such deed void. For the instrument is no longer the deed of the party and he may with propriety, in a suit upon it, plead *non est factum.*

As, if a bond is made to the sheriff for appearance and in the bond the sheriff's name is omitted, and after the delivery thereof his name is interlined by the obligee ; so, if one makes a bond for £10 and after the sealing of it another £10 is added, which makes it £20, the deed is void. It was so held in *Pigot's* case, (11 Coke, 26.)

This rule was enforced in courts of law with great strictness on the grounds of public policy, as the forgery of such instruments was held then to be only a misdemeanor and it was deemed reasonable, as matter of policy, that the holders of such instruments should be held to preserve them free from alteration, under the peril of losing any benefit which they might otherwise derive from them. But it was for a time doubted whether this rule extended to notes and bills of exchange. But this doubt seems to have been resolved in the case of *Master* v. *Millar,* (1 Term. 320,) which is the leading case on this subject.

In that case it was held by a majority of the Court that an unauthorized alteration of the date of a bill of exchange from the 26th day of March to the 20th day of March, after acceptance, whereby the payment would be accelerated, avoids the instrument and that no action can be afterwards had upon it, even by an innocent holder for a valuable consideration. Lord Kenyon in his opinion in this case says, " that the alteration in this instrument would have avoided it, if it had been a deed, no person can doubt : and why, in point of policy, would it have

Arnold, Barbour & Hartshorn v. Jones.

had that effect in a deed ? Because no man shall take the chance of committing a fraud without running any risk of losing by the event, when it is detected."

By this decision and by the weight of authority in the American decisions, it would seem to be the settled rule, that fraud in the holder of the instrument or in the person for whose benefit it is altered, is the reason why the alteration avoids the instrument ; although some of the decisions base the rule upon the ground of the destruction of the identity of the instrument.

And there is no substantial reason why this rule should not be applied to notes and to all other written contracts as well as to deeds ; for all such instruments are the evidence of the contracts between the parties and whatever alteration therefore changes the legal effect of the instrument makes it another and not the same contract, and it should no longer in law bind the party, because it is not the contract by which he agreed to be bound.

A material alteration, therefore, after execution, by one claiming a benefit under a deed or by his privity, destroys the instrument as to him and he can never sue upon it. *Lewis* v. *Payne*, (8 Cowen, 71.) *Withers* v. *Atkinson*, (1 Watts, 237.)

The effect of such alteration is that the instrument, so far as the spoliator is concerned, is from that time destroyed and extinguished ; its past operation is not counteracted ; executed contracts evidenced by it are not rescinded ; estates and titles vested by transmutation of possession, whether by the common law or the statute, are not divested ; but no future benefit can be claimed by that party from the deed and no warranty, obligations or other executory contracts can be enforced by him through its instrumentality. *Hewitt* v. *Malin*, (22 Wend. 388,) in the Court of Errors. *Hatch, et al.* v. *Hatch, et al.*, (9 Mass. 307.) *Burnett* v. *Thorndike*, (1 Greenleaf, 73.)

But the stringency of the rule relative to the alterations in deeds, laid down in Pigot's case, which was decided mainly with reference to the then rigid technicalities of pleading and in which it was held that not only a material but an immaterial alteration by the obligee himself would make the deed void, and, also, that and an immaterial alteration by a stranger, without the privity of the obligee, would render the deed void, has been greatly relaxed and modified by modern decisions relative to alterations made by strangers without the privity of the party claiming under the instrument.

And it has been held in decisions supported by sound reason and practical common sense, that a material alteration in a written instrument made by a stranger, and not by the privity of the party claiming under it, or by accident or mistake, will not render such instrument void. In *Jackson* v. *Malin*, (15 Johns. 293,) Platt, J., says : " that a material alteration, though made by a stranger without the privity of the party claiming under it, renders the deed void, is a proposition to which I am not ready to assent." And in *Cutts* v. *United States*, (1 Gallison, 69,) Justice Story decided that a deed is not avoided by the seals being torn off fraudulently or innocently by the obligor. In *Nichols* v. *Johnson*, (10 Conn. 93,) it was held that an alteration of a written instrument by a stranger, though material, will not render such instrument inoperative. And in *Rees* v. *Overbaugh*, (6 Cowen, 746,) the tearing off of the seals of an agreement, by the person with whom it was left for safe keeping by both parties, does not destroy the deed.

A material alteration in a deed or note may be made after its execution by the consent of all the parties, but perhaps not after its acknowledgement. *Speak, et al.* v. *United States*, (9 Cranch, 28.) *Barrington, et al.* v. *Bank of Washington*, (14 Serg. & Rawle, 405.)

But we apprehend that the doctrine of implied consent has been carried so far by the modern decisions, that only material alterations will avoid a written instrument unless there be fraud. It is important therefore, to determine what alterations are material and what immaterial.

It may safely be laid down as a practical rule that any alteration which causes the instrument to speak a language different in legal effect from that which it originally spoke is a material alteration, (1 Greenleaf, Ev. § 565.) Under this definition, whatever would change the legal liability of a party to a note or would confer an additional advantage on the plaintiff would be deemed a material alteration. But such an alteration as would not in law produce this effect and made without fraud, is immaterial.

The following adjudged cases will tend to illustrate this rule. An alteration in the date of a note from 1809 to 1819, though the note was executed in 1819, was deemed material. *Bower* v. *Jewell*, (2 N. H. 543.)— *Hacker* v. *Jamison*, (2 Watts & Serg. 438.) So extending the time of payment in a note from six to sixty days, *Davis* v. *Jenny*, (1 Met. 221); the insertion of the negotiable words " or order" in a note not before negotiable ; the insertion of " young" before " merchantable stock" in the promise, *Martindale* v. *Fallet*, (1 N. H. 95); so appointing a particular place of payment where there was none before inserted. *Woodworth* v. *Bank of America*, (10 Johns. 391.)

So any alteration which affects the evidence or changes the mode of proof has been held material ; as procuring a person not present at the making of a promissory note to put his name to it as a witness. *Homer* v. *Wallis*, (11 Mass. 309.)

But alterations in instruments are deemed immaterial, where neither the rights nor interests, duties nor obliga-

tions of either of the parties are in any manner effected or changed." *Smith* v. *Crocker, et al.* (5 Mass. 538.)— *Brown* v. *Pinkham,* (18 Pick. 172.)

Now, applying these practical rules to the alteration of the note in this case, made under the circumstances found in the trial, we have not been able to come to the conclusion, that the alteration renders this note void. It is such an alteration as in no way can effect the legal liability of the defendant or change the mode of proof.

Although it may perhaps be presumed that a person making a note knows the individual or individuals to whom the note is given, yet in this case, this note was given not to any individuals, but to a firm, the names of which firm, as it appeared in proof, were neither known to the defendant nor to the makers of this note. The plaintiffs were the persons who composed this firm and they carried on the business of dealing in steam and gas pipes, and no other business, as well in the name of " Arnold, Barbour & Hartshorn," as in the name of " The Providence Steam Pipe and Gas Company," and this note was given for a debt due to this firm from the makers, Reisner & Caswell, and was altered by Caswell, one of the makers, without the express consent of the defendant, at the request of the plaintiffs and before said debt was discharged by them.

This state of facts shows that the defendant intended to give this note and become liable to whomever might compose this firm ; that this note itself did not designate, nor was it evidence of the names of the persons who composed this firm. The defendant's liability did not therefore depend wholly upon the evidence which this note afforded, but upon evidence *aliunde,* upon proof of the names of the individuals who composed this firm, to wit, the plaintiffs. And this alteration and erasure could in

no way change or effect this proof.  By an inspection of this note it appears that the words, " The Providence Steam Pipe and Gas Company" are not rendered illegible by the erasure, that a pen appears to have been simply drawn across the words and the words " Arnold, Barbour & Hartshorn," inserted above them.

This erasure or alteration does not therefore, in our opinion, in legal effect or in fact destroy the identity of this note.    .

But the question of identity was proper to be submitted to the jury for their determination upon all the evidence in the case.

An erasure in an instrument does not of itself necessarily imply fraud, for if it were so, an erasure made by accident or by a stranger without the privilege of the party claiming under it must be deemed material.

In the case of *Adams, et al.* v. *Fry*, (3 Met. 103,) it it was adjudged, that the act of the obligee in procuring a person, who was not present at the execution of a bond, nor duly authorized to attest it, to sign his name thereto as an attesting witness, was *prima facie*, sufficient to raise the inference of a fraudulent intent; but that it was competent for the obligee to rebut such inference, and if the act be shown to have been done without any fraudulent purpose, that the bond should not be avoided by such attestation.

The Court could not therefore with any propriety have legally rejected the evidence offered at the trial and nonsuited the plaintiffs as moved by the counsel for the defendant.

This evidence tended conclusively to rebut any presumption of fraud and to show the circumstances under which and the intent and purpose for which, this erasure and alteration were made and their effect upon the liability

Arnold, Barbour & Hartshorn *v.* Jones.

of the defendant and the claim of the plaintiff.  And we apprehend that the admission of such evidence is sanctioned by the decisions of learned judicial tribunals entitled to the highest respect. *Leyfield's case,* (10 *Co.* 92,) *Taylor* v. *Morely.)* (6 C. & P. 273,) *Bailey* v. *Taylor,* (11 Conn. 531.)

And although any alterations in commercial paper, made without consent of the parties affected by them, are highly reprehensible, and when material or fraudulent would be visited by this Court with the most rigid penalties of the law ; yet, we cannot, without disregarding the weight of judicial decisions, sustain the defendant's motion for a new trial, for the reasons therein stated.

The motion is therefore over-ruled without costs,— judgment to be rendered on the verdict as of last term.