If an original entry in a shop book &c. is in the handwriting of a clerk, it must be proved by him before it can be admitted in evidence, unless he is dead, or out of the power of the court.
*Vid. Poultney* v. *Ross,*
1 *Dall.* 238.
A receipt for goods

S. and R. STERRETT Executors of W. STERRETT *against* BULL, and others.

IN ERROR.

THIS was a writ of error to the Common Pleas of *Chester* county. It was an action brought by the defendants in error, (the plaintiffs below) who were furnacemasters, to recover the price of some pig iron sold to *Sterrett*, who was a forgemaster. Upon the trial of the cause in *August* 1806, the plaintiffs, to prove the sale and delivery of the iron, offered in evidence a book which *Smith*, one of the plaintiffs, had previously sworn was their *book of original entries*, kept principally by two of their clerks, although some of the entries were by him; but the entries bearing upon this cause *were made by a clerk.*

written in a book of original entries by the clerk, and signed by the person to whom the goods are delivered, must be proved in the same manner as other receipts; and a custom to treat it as an original entry is bad.

This evidence was objected to, upon the ground that the entries should be proved by the clerk himself; but the court admitted the evidence, and the President sealed a bill of exceptions.

After the book was admitted, it appeared that what was called an entry, was an agreement written in the book, in the following words: "We the subscribers do promise to deliver "Mr. *William Sterrett* junior, the number of tons of pigs to "our respective names annexed;" under which was a schedule presenting different columns, wherein were written the day of the month, the quantity of pig iron delivered, and the signatures of certain persons, said to be carters, or their marks with their names filled in by the clerk. A witness was then called, who swore that he kept books as clerk at two furnaces, about a year and a half at one, and a few weeks at the other, and never at any furnace besides; that in these places the customary mode of charging pig iron delivered, was the one pursued in this case; receipts for the pigs were taken from the carters of the forgemasters, who hauled the pigs away; to whom at the same time an invoice was given expressing the same quantity with the receipt. There was, however, no proof that the signatures in this case were made by the carters of the forgemasters, or by their authority. The defendant's counsel again objected to this evidence, since on examination it appeared to be a common receipt, and not an entry properly so called, and since the testimony fell far short of establishing an usage for this kind of entry. The President was opposed to the testimony; but the associate judges admitted it, and sealed a second bill of exceptions. The jury found for the plaintiffs.

The bills of exceptions were now sent up with the record, and the admissibility of the evidence argued before this court.

*T. Ross* for the plaintiffs in error, contended that as to the matter of exception in the *first* bill, it stood here precisely upon the same footing as in *England.* The entries having been made by the clerk of the defendants in error, he should have been produced; or upon proof that he was dead or was not within the power of the court, evidence that the entries were in his handwriting should have been demanded as the next best legal evidence to be procured. 3. *Bl. Comm.* 368. That as to the matter of the *second* bill, it was obvious that the writings referred to

1808.

STERRETT
*v.*
BULL.

STERRETT
*v.*
BULL.

were common receipts, purporting to be executed by carters to whom pig iron was delivered; and therefore to charge the plaintiffs in error, it was essential in the first place to prove the authority of the carters, and then to prove their signatures. To change the nature of evidence, by calling this receipt book a book of original entries, was certainly a new attempt; and it was out of the question to support such an attempt by a usage so imperfectly proved, and which would still be a doubtful usage in point of law after it should be proved completely.

*Frazer* for the defendants in error, answered, *first*, that the strict rules of law with regard to evidence, ought not to be extended to mercantile transactions; and he cited the case of *Riché* and *Richards* v. *Broadfield*, (a) in which an account sales of an adventure shipped to *New-York*, signed by the factor, was admitted in evidence to prove a loss on the goods, upon the mere proof of the factor's handwriting. That the rule which subsisted in *England* upon the subject of shop books or books of original entries, had been held, from our peculiar situation, to be inapplicable in this state; for, in the case of *Poulteney et al.* v. *Ross*, (b) it was ruled by SHIPPEN, *President*, that " although " in *England* the shop book of a tradesman is not evidence of a " debt, without the assistant oath of the clerk who made the en- " try, yet *here*, from the necessity of the case, as business is " often carried on by the principal, and many of our tradesmen " do not keep clerks, the book proved by the oath of the plain- " tiff himself has always been admitted." In the *second* place, the object of the evidence mentioned in the second bill was to prove the delivery of the pig iron to the plaintiffs in error; and inasmuch as a mere charge of delivery made by the defendants in error in their books, would have been evidence of the fact under the oath of *Smith*, can it be any the less so because the precaution has been taken of making the carters sign a receipt? This is stronger than the case of *Price* v. *The Earl of Torrington*, (c) in which the signature of the plaintiff's own drayman to an account of beer delivered was admitted in evidence to charge the defendant. *Esp.* 141. *Bull. N. P.* 282. But this,

(a) 1 *Dall.* 16.          (c) 1 *Salk.* 285
(b) 1 *Dall.* 238.

moreover, was the customary mode of making *entries* at iron works; and they are therefore to be proved as original entries of any other kind. It is the custom for forgemasters to send *their* carters to the furnacemasters; and the writing taken together amounts to a charge of the delivery of pig iron to the forge-master.

TILGHMAN C. J. delivered the opinion of the court.

This case is brought before the court on a writ of error to the Court of Common Pleas of *Chester* county, and is founded on two bills of exceptions taken on the trial.

Although there are two bills of exceptions, yet the subject of them is the same, viz. the admissibility of the plaintiff's book in evidence. They present the matter under two different points of view, and shall be considered separately.

The first exception, which is signed by the presiding judge, was taken to the admission of the book after one of the plaintiffs had sworn " that it was their book of original entries, made " principally by two clerks of the plaintiffs." It appears that if the book can properly be called a book of entries, it is one of a very uncommon kind; it does not contain entries of goods sold, in the usual manner, but is in fact a book containing the receipts of different carters for quantities of iron received by them to be carried to different persons. There was no proof that these carters were in the service of the plaintiffs; on the contrary, I understand that they were employed by the persons to whom the iron was to be delivered. Those who could write signed their names, but where they could not write they made their mark, opposite to which the name was written by a clerk of the plaintiffs. Now if this is to be considered as a *receipt*, there is no reason why the handwriting or the making of the mark should not be proved. But even if it could be considered as an entry made by the clerk, he should be produced, or proof made that he was dead or out of the power of the court. In consideration of the mode of doing business in the infancy of the country, when many people kept their *own books*, it has been permitted from the necessity of the case, to offer these books in evidence. But when no such necessity exists, when the fact is that clerks have been employed and the entries made by *them*, there is no cause for violating that wise principle, that no man shall be al-

lowed to give testimony for himself. The court are therefore of opinion, that as a book of original entries, under the circumstances of this case the evidence was improperly admitted.

When the second exception, signed by the two associate judges, and not by the president, was taken, the book was supported by the evidence of a witness who gave testimony, that to the best of his knowledge this book was kept according to the *custom* of *ironmasters*. We do not think that any such custom was well proved. The witness had only been clerk a year and a half at one furnace, and a few weeks at another. But even if it had been better proved, the court are of opinion that it would be going too far to give the force of law to a practice, which would tend to charge the purchasers of iron with large sums of money, for iron delivered to carters, who gave written receipts, without either proving that those carters were in the employ of the purchasers, or that they signed the receipts in the books of the seller. It may have been the custom to take receipts in the manner these are taken; and it appears to be a very prudent custom, if you add to it the precaution of making the carter produce an order from the purchaser, before the iron is delivered; but it has not been the practice of courts of justice to admit such receipts as evidence, without more corroborating testimony than was offered in this case.

The opinion of the court is, that the evidence was improperly admitted, and consequently the judgment of the Court of Common Pleas must be reversed.

Judgment Reversed.