ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

MERRILL and ALDERMAN *v.* THE ITHACA and OWEGO RAIL ROAD COMPANY.

Where work done under a *special contract* is not completed within the time limited for its performance, but is progressed in *after the day* with the assent of the party for whom the work is done, a recovery may be had under the *common counts* for the work done ; but the plaintiff is confined to the rate of compensation fixed by the contract, whether one party or the other be the *innocent* cause of the delay, where there is no intimation during the progress of the work of an intention to demand a different rate of compensation.

But where the delay is caused by the wilful acts or omissions of the party for whom the work is done, originating in a premeditated design to embarrass and throw obstacles in the way of performance by the other party, who notwithstanding, proceeds and bestows his time and labor in attempting the completion of the job, until in despair he finally abandons the work, the rule that the special contract must control as to the rate of compensation no longer prevails, and the party is entitled to recover under a *quantum meruit.*

A party who has performed labor for another, cannot, in an action to recover for such work, produce in evidence check-rolls or accounts of the number of days' work performed by those in his employment, for the purpose of fixing the amount of labor done, without verifying the same by the oath of the agent who made the entries, or kept the accounts, if such agent be *living.*

If the agent be *dead* at the time of the trial, *original entries* made by him *in the usual course of business* may be produced in evidence ; but the *mere fact* that he is absent from the state, so as to be beyond the reach of the process of the court, will not entitle the party to give such entries in evidence.

When *original entries* are produced, and the person who made them, or saw them made by another, knowing them at the time to be true, testified that he made the entries or saw them made, and that he believes them to be true, although, at the time of his testifying, he has no recollection of the facts set forth in the entries, such evidence is admissible and *prima facie* sufficient to establish the facts evidenced by the entries. Such proof, however, *it seems,* will not be received, where only a *copy* of the original entries is produced.

Charges for services done or property delivered under the supposed existence of a *special contract*, but which afterwards become *matter of account* by operation of law in consequence of a rescission of the contract, cannot be proved by the party's book; there must be a right to charge when the service is done or the goods delivered.

When and under what circumstances *original entries* or *memoranda* may be received in evidence, considered; and many cases on the subject collected and commented upon.

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

This was an action of *assumpsit*, for work, labor and services, and materials found in the construction of a part of the rail road of the defendants. The declaration contained only the common counts. The cause was heard before referees, who allowed the plaintiffs, under the *quantum meruit* count, to give evidence of the quantity of work done and of its value; notwithstanding that the defendants produced in evidence *contracts in writing*, signed and sealed by the parties, specifying the work to be done, the mode in which it should be done, the prices to be paid for it, and the manner in which the amount to be received by the defendants should be ascertained; and proved that the work was done under such contracts, that the amounts due were periodically ascertained in the manner prescribed by the contracts and paid to the plaintiffs. According to the *terms* of the contracts, the plaintiffs would have been entitled to recover about $2000 beyond the payments made to them during the progress of the work, instead of which sum the referees made a report in favor of the plaintiffs for $12,125,08; which report the defendants now move to set aside. The contracts were entered into on the 4th February, 1832, by which the plaintiffs stipulated that a portion of the work should be completed on or before 15th July, 1832, and the residue on or before 15th September, 1832. The plaintiffs commenced the work, which, when the time limited for its completion arrived, was not finished. The plaintiffs, however, continued to labor upon the job, and the defendants, from time to time, made payments to them according to estimates made and certificates given by the engineer of the company, in pursuance of the stipulations of the contracts. The plaintiffs continued to labor on the road until May, 1833, when they abandoned the whole work, having in the previ-

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

ous month of *January* abandoned a particular section on which they had labored up to that time. It seems that the plaintiffs, under the direction of the engineer, worked upon sections of the road not embraced in the written contracts, but the whole work was done, estimates made and payments received as if the whole were embraced in the sealed contracts. On the part of the plaintiffs a mass of testimony was exhibited, to show not only that they had been greatly hindered in the progress of the work, by the neglect of the defendants, **W** not employing a sufficient number of engineers to lay out the work, make estimates, &c. but that there had been a systematic course of proceeding on the part of the defendants to throw obstacles in the way of the completion of the job, by means of which the plaintiffs had been greatly damnified. The plaintiffs, for these reasons, insisted that they were not bound by the terms of the contracts, as to the measure of compensation to be made to them for the work bestowed, but were entitled to recover, under the *quantum meruit* count, what they should prove the work to be worth. This position was conceded to them by the referees, and the plaintiffs accordingly gave in evidence the species of proof stated in the opinion delivered by Mr. Justice Cowen, and for the receiving of which, *in the manner* in which it appeared before the referees, the report is set aside.

*D. D. Barnard,* for defendants.

*M. T. Reynolds & S. Stevens,* for plaintiffs.

*By the Court,* COWEN, J. After such an exact tacit adherence, on the side of the plaintiffs, as appears from the evidence in this case, to the written terms of the contracts, without one word that they intended to alter their rates of charge, it would be a fraud upon the company were they allowed to change their ground. It is not denied that they may resort to the general counts. Both parties having assented that the work should go forward after the day, that may be so. It is clearly so as to line C. and section 4, if

they are not touched by the general provisions of the contract in respect to section 3 ; yet the rule is well settled, that though there be a deviation, yet the special contract shall be pursued as far as it can be traced and made to apply. Here all the powers of the engineer in chief, with the measures and estimates, may be retained and applied to the whole work, with very little exception. For a plain excess beyond what the parties may have treated as within the articles, there could of course be no objection to allow on the basis of a *quantum meruit*. I am here speaking particularly of the work done on sections 3 and 4. As to section 8, there is no doubt that all the substantial provisions of the written contract should be applied. The prices and estimates of the engineer in chief would still be conclusive, though we should allow the action of *indebitatus assumpsit*. It is a mere change of remedy. It would be gross injustice to allow any substantial departure from stipulations, in reference to which the parties all along acted. No matter for the delay, and no matter which party was so unfortunate as to be the innocent occasion of it. It was the business of either to speak out, if a change of terms was in contemplation. Silence was equivalent to saying, "I go on upon the old terms." It is like a tenant holding over in silence. He shall pay his last year's rent. If one party, by his conduct or silence, leads another to believe that he is at work for him on *certain wages*, he is estopped and shall not add to his demand. I forbear, however, to pursue this branch of the inquiry. I have said so much merely by way of protest against the notion that, because the law is favorable to a remedy in some form, though the covenant may not have been literally fulfilled, it is yet not sedulous to save all the terms of the written contract as far as possible ; measures, proportions, prices, bases of estimate, quality of the work, every thing fair and honest.

I have so far supposed all delay and embarrassment to have been the result of misfortune ; of oversight, miscalculation, or want of fore cast in one party or the other, or both ; want of skill, if you please, in the conduct of business, and I care not on which side. But there is another view of

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

the case which is decisive in favor of a *departure from the original principles and mode of estimate,* at the election of the plaintiffs. [Mr. Justice Cowen here reviewed the testimony which had been given in reference to embarrassments to the completion of the job, alleged to have been thrown in the way of the plaintiffs by the defendants, and then proceeds.] I do not say the referees were bound to believe that here was a project by the defendants to abuse the great power confided to them, or to their engineer, by turning it into a means of ruinous delay. It is only necessary to see from the testimony, both direct and circumstantial, as it comes from many witnesses, that they were justified in such a conclusion. There was certainly a conflict of evidence upon the question; but that belonged to the referees. Coming to that conclusion, whose fault is it that this contract was not fulfilled by the 15th of July? Whose fault is it that these plaintiffs passed their summer in a state of tantalizing suspense, and were driven with this large concern on their hands into the ensuing winter? Whose fault is it that a contract, which the engineer thinks performed with adequate skill, would have been profitable on the original estimates, has nearly doubled in the expense of performance? Thus hoodwinked, and led into a train of additional expense which would exhaust two ordinary fortunes; pursuing a pilgrimage of toil in the service of these defendants, which, with an honest and hearty concurrence on their part might have been finished before the inclement season came, the parties stand clear of the covenant in all its features; and the plaintiffs are entitled to an indemnity upon the principles adopted by the referees. They might have stopped, and sued the defendants for a breach of their covenant. But going on under the circumstances disclosed, there is nothing of the primary principles of estimate which could have been justly applied.

I apprehend, however, that the cause must go back to the referees and be re-heard, for an error committed by them in the admission of the kind of evidence by which they appear to have governed themselves in fixing the amount of labor. Finding that the estimates of the engineer in chief had be-

ALBANY,
Jan, 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

come entirely inapplicable and positively unjust, by the baffling of the defendants and delays of the work till the very worst season, it became necessary for the plaintiffs to communicate to the referees, by some other evidence, the amount of labor ; and they chose to adopt, as they had a right to do, the number of days in team and other work. For the purpose of ascertaining the days of work performed as between themselves and their laborers, their superintendents were directed to keep what were called check-rolls, and which appear to have been books marked A, B, C, &c. devoted to each section, in which the laborer's name was placed in the left margin ; and in a column opposite, and under the day of the week at the top of that column, was written in figures the time he worked on that day. At evening when the laborers came in, the superintendents of the particular section being generally together, the roll of names were called, and the amount of labor reported and marked by some one. The particular superintendent of each squadron of laborers heard the names, and generally either wrote the time or saw it set down, and was capable of deciding to his own satisfaction whether the item was correct. I say generally. These persons, as far as they were called to prove the rolls, did not pretend that the superintendents were always together, that they always wrote or saw written the accounts of their particular squadron, or always heard the names. Some of them were absent for days and even months ; and a considerable portion of these entries must have been made without their actual or potential knowledge. One says he was sick a part of the time, and could not be out with his hands. He, however, saw or superintended the entries at his quarters in the evening. It does not appear that all the superintendents were sworn before the books were offered, much less all those persons who acted as clerks, and those who were engaged as substitutes during the absence or sickness of the general superintendents. Nor were all the clerks or superintendents, or their substitutes named in evidence and absences accounted for. Indeed, the contrary appears, or is plainly inferrible from the case as made out by the affidavit of the attorney

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

for the plaintiffs, into which I have so far looked, because it was adopted as containing the more correct statement of the oral evidence, the case not having been referred to and settled by the referees. The books, of course, continued in the hands or under the control of the plaintiffs. The superintendents sworn expressed a strong general belief of the accuracy of the rolls. Several of them said settlements had been made by their particular rolls, and they always proved to be correct. They remembered names and other circumstances connected with the books, which confirmed them.

Such was substantially the account of these check-rolls when they were offered to, and indiscriminately received, by the referees ; and by what I collect from the case, formed about the only guide in fixing the amount of labor. The affidavit of the defendant's counsel says, "The plaintiffs offered the check-roll books in evidence, to prove the amount of labor performed, which was objected to by the defendants' counsel, but admitted by the referees." The answering affidavit of the attorney for the plaintiffs says, that "No objection was made by the defendant's counsel, either to the *competency* or *sufficiency* of the *proof* of the plaintiff's check-rolls shewing the amount of labor done by them on the rail road." This is true according to the affidavit of the defendant's counsel. He does not state that he made difficulty as to the proof of the plaintiff's check-rolls. In fairness of construction, the defendant's objection was, that though the rolls were well enough proved and identified, yet, still they were not competent evidence for the purpose for which they were offered. I at first thought the opposing affidavit was disingenuous and evasive. Such a bad moral aspect may be removed by supposing that it intended to raise the question, whether the objection was sufficiently specific. It might have been more so. It might have said, "You have not rendered a sufficient account of these memoranda to make them evidence. You should have called every body concerned in making them up, or account for the absence of those persons by showing that they were dead, or at least, beyond the reach of pro-

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

cess. We object to the rolls as incompetent, but not to the proof of them." The admissibility of the rolls, however, as showing the amount, we shall see depended on certain preliminary extrinsic proof. The whole offer was objected to upon the state of facts; upon the account of these check-rolls, as derived from a number of superintendents who had been sworn in order to make the proof full for their admission. Yet, says the defendant's counsel, " we object to the offer." Looking to the course that was pursued, I fear it would be hypercritical to say that the objection did not signify a want of the proper preliminaries. I have already adverted in a general way, to the proof of these. Among the superintendents, six were sworn, and called on to give an account of the check-rolls in order to their being offered. The affidavit for the defendants represents one of them as stating that the entries of work were generally made by one of the plaintiffs; and this is not contradicted by the affidavit of the plaintiff's attorney. On the whole, the attention both of referees and counsel must have been turned to the question whether the preliminary proof was sufficient to warrant the offer of the rolls in evidence.

Were these rolls evidence? They were doubtless as nearly safe as was necessary for business purposes at the time; perhaps as producing strong moral conviction on the minds of men under any circumstances. But are such *memoranda* to be received in evidence in our courts of justice? They would have been legally admissible as books of account between the plaintiffs and their workmen; for they were adopted as the books of both, and kept open for the inspection of each. They are like partners' books between themselves. *Heart* v. *Corning,* 3 Paige, 566. *Fletcher* v. *Pollard,* 2 Hen. & Munf. 544, 549, 550. *Brickhouse* v. *Hunter,* 4 id. 363. *Jordan* v. *White,* 4 Martin's Lou. R. N. S. 335, 339. *Reno* v. *Crane,* 2 Blackf. 217. The superintendents or others making the entries, were agents for both parties. *Union Bank* v. *Knapp,* 3 Pick. 96, 108. But not so as to the defendants. They were not admissible as books of account kept by one dealer with an-

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

other ; first, because the plaintiffs had clerks and other witnesses of the labor. *Vosburgh* v. *Thayer*, 12 John. R. 461. *Kenedy* v. *Fairman*, 1 Hayw. 458. *Whitfield* v. *Walk*, 2 id. 24. *Sterritt's Ex'rs* v. *Bull*, 1 Binn. 234. Secondly : They were not the general books of daily account of the plaintiffs ; and there was no trust implied that they should keep these accounts for the defendants. *Vosburgh* v. *Thayer*, 12 John. R. 461. *Lynch* v. *Hugo*, 1 Bay, 33. *Prince* v. *Smith*, 4 Mass. R. 455. *Hough* v. *Doyle*, 4 Rawle, 291. Per Kirkpatrick, C. J. in *Wilson* v. *Wilson*, 1 Halst. 94. *Thompson* v. *M'Kelvey*, 13 Serg. & Rawle, 126. *Swing* v. *Sparks*. 2 Halst. 59. Per Duncan, J. in *Curran* v. *Crawford*, 4 Serg. & Rawle, 5. *Sterrett* v. *Bull*, 1 Bin. 237. Thirdly : It is not a simple case of charge for services done on a *quantum meruit*, known and recognized as such by both parties at the time. Charges for any thing done or delivered under a supposed special contract, but which afterwards become matter of account by operation of law, in consequence of a rescission of the contract, cannot be proved by the party's book. There must be a right to charge when the service is done, or the goods delivered. *Bradley* v. *Goodyear*, 1 Day, 104. *Slasson* v. *Davis*, 1 Aik. 73, 74. *Peck* v. *Jones*, Kirby, 289. *Terrill* v. *Beecher*, 9 Conn. R. 344. Nor does the case come within the rule allowing a banker's book in evidence, kept by many clerks, only one being sworn to identify it, and to show the manner of its being kept. This was allowed in *Furness* v. *Cope*, 5 Bing. 114 ; 2 Moore & Payne, 197, S. C. Such a book, so proved, was received to show that a customer of a bank had no funds there. But the banker was not a party ; it was the bank ledger of a house which stood indifferent between the parties ; and its admissibility was put on the great inconvenience of calling all the clerks.

If then these rolls were receivable at all, it must be on the ground that they were *original entries made in the usual course of business*. These, unless the person himself who made the entries, is produced, are not evidence ; but they may be received where he is dead. This is the English rule of several cases grounded on *Price* v. *Lord Torring-*

*ton,* 1 Salk. 285 ; 2 Ld. Ray, 873, S. C.   Nor is the rule con-
fined to the ground stated in that case: that the entry would
be evidence to charge the man who made it.   This is cer-
tainly one reason against allowing the inference of fraud in
the entries.   But there are several cases collected in the last
edition of Phillipps' Evidence, 1 vol. 263, 4, 5, shewing that
this need not be so.   It is enough if the person ·who made
the entry be dead, that it was made in the usual course of
business.   *Doe, ex dem. Platteshall* v. *Turford,* 3 Barn. &
Adolph. 890, decided since, and *Sutton* v. *Gregory,* 2 Peake's
N. P. Cas. 150, published since, allow the same ground.
The cases in the United States, are numerous.   Among them,
are entries by deceased notaries, *Halliday* v. *Martinet,* 20
Johns. R. 168; or the runner a messenger of a bank, *Welsh*
v. *Barrett,* 15 Mass. R. 380; or a cashier, *Nichols* v. *Gold-
smith,* 7 Wendell, 160 ; or a merchant's deceased clerk, *Lewis'
Ex'r* v. *Norton,* 1 Wash. R. of Virg. 76.   *Hunter* v. *Smith,*
6 Mart. Lou. R., N. S. 351.   *Herring* v. *Levy,* 4 id. 383.
*Clarke* v. *Magruder,* 2 Har. & John. 77.   *King* v. *Mad-
dux's Ex'rs,* 7 id. 467.   But in this class of cases, we hold
that even absence beyond the jurisdiction of the court will
not excuse the production of the person who made the entry:
nothing short of his death.   *Wilbur* v. *Selden,* 6 Cowen's R.
162.   And if the entry was made by a sub-clerk, it cannot
be received till he be produced, or his death shown.   Id.

Then were these rolls proved as the original entries of
living persons, present to verify them, and testifying that
they were made by them, and that they believed them to be
true ?   This would have entitled them to be read as evi-
dence, even though the witnesses might have forgotten the
transactions which they recorded.   That seems to be the
established general rule as to an original entry, though it
has been restricted, in this state, to entries in the course of
business.   In *Sandwell* v. *Sandwell,* 2 Comb. 445, in 9
Wm. III., *at nisi prius,* in proving words of slander, Holt,
C. J., said, "Where a witness swears to a *matter,* he is not
to read a paper for evidence, though he may look upon it

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

to refresh his memory; but if he swears to *words*, he may read it; if he swears that he presently committed it to writing. A memorandum was denied as evidence which was not made in the course of business, in *Lawrence* v. *Barker*, 5 Wendell, 301. Savage, C. J., distinguished one made of a private conversation *for the convenience of the witness*, from entries in merchants' books and other cases, where there is *a necessity for the entry*. The memorandum in question related to a conversation at the time a bond was sold. The witness had forgotten it, though he had no doubt the memorandum was true. Yet the court refused the paper as evidence. The remarks of Chancellor Walworth, in *Feeter* v. *Heath*, 11 Wendell, 485, recognize a greater latitude in respect to memoranda of dates, numbers, quantities and sums, which a witness cannot be supposed to remember. Such instances are continually occurring in the course of business; and yet our books of evidence furnish a less intelligible guide on this than on many other subjects of much less practical importance.

There is an obscurity in the text of Phillipps' Evidence, one of our best books, running through all his editions, arising from a failure to distinguish between *original memoranda* and *copies* or *extracts*. The attention of the learned constitutional court of South Carolina was drawn to this subject, in *The State* v. *Rawls*, 2 Nott & M'Cord, 334. Nott, J., says, " It is true that Phillipps, in his treatise on Evidence, says that ' a witness, to assist his memory, may use a written entry or memorandum, or the copy of a memorandum, and if he afterward can swear positively to the truth of the facts there stated, such evidence will be sufficient; yet if he cannot from recollection speak to the fact any farther than as finding it stated in a written entry, his testimony will amount to nothing.' But by a reference to the cases quoted by Phillipps, it will be found that the rule as laid down by him applies only to *copies* of entries, and not to the *original*. The principal cases relied on are *Doe* v. *Perkins*, 3 D. & E. 752, and *Tanner* v. *Taylor*, a manuscript report of which Mr. Justice Buller read in that case. The case of *Tanner* v. *Taylor* was an action for goods

sold; the witness who proved the delivery took it from an account which he had in his hand, being a copy as he said of the day book which he had left at home. It being objected that the original ought to be produced, Mr. Baron Legge said if he would swear positively to the delivery from recollection, and the paper was only to refresh his memory, he might make use of it; but if he could not, from recollection swear to the delivery any farther than finding them entered in the books, then the original should have been produced. The case of *Doe* v. *Perkins* is more directly in point. The question was, at what time in the year the annual leases of several tenants expired. One Aldridge went round with the receiver of the rents, and minuted down their declarations respecting the times when they severally became tenants. When Aldridge was examined, the original book was not in court; but he spoke of the dates of the several tenancies from extracts made by himself out of that book, confessing upon his cross-examination, that he had no memory of his own of those specific facts; but that the evidence he was giving as to those facts was founded altogether upon the extracts which he had made from the above mentioned book. This evidence was objected to, on the ground that as the witness did not pretend to speak to facts from his own recollection, he ought not to be permitted to give evidence from any extracts, but that the original book ought to be produced. The presiding judge, however, admitted the evidence, and the plaintiff had a verdict. On a motion for a new trial, Lord Kenyon, after adverting to the case of *Tanner* v. *Taylor*, above mentioned, said that the rule appeared to have been clearly settled, and that every day's practice agreed with it; and that comparing the case with the general rule, the court were clearly of opinion that Aldridge, the witness, ought not to have been permitted to speak to facts from the extracts which he made use of at that trial, and a new trial was granted. The same rule is laid down in Peake's Evidence." It is more important to recur to the original and leading authorities, because several adjudged cases proceeding without examination of them, have repudiated ori-

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

ginal and well authenticated memoranda merely because the witness, at the time of the trial, failed to recollect the facts contained in them. Such was the case of *Calvert* v. *Fitzgerald*, 1 Litt. Sel. Cas. 388, and such were evidently the views of Tilghman, C. J., in *The Juniata Bank* v. *Brown*, 5 Serg. & Rawle, 232, and of Duncan J., in *Smith* v. *Lawe*, 12 Serg. & Rawle, 87. In *Maugham* v. *Hubbard*, 2 Mann. & Ryl., 5, 7, a witness said, from seeing his original entry, he had no doubt he had received the money. Lord Tenterden, C. J., thought his statement was equivalent to saying that he knew and recollected independently of the book. But Bayley, J. did not place the same construction on the language. Yet he was for receiving the entry in evidence, though the witness could not remember the fact. He likened the case to proof of the execution of a deed by a subscribing witness. Though he may state that he does not recollect the fact of the deed being executed in his presence, but that seeing his own signature, he has no doubt that he saw it executed; that, said the judge, has always been received as sufficient proof of its execution. His opinion was given to the same effect, in *Lloyd* v. *Freshfield*, 2 Carr. & Payne, 325.

A great variety of American cases have arisen where the witness, having made the entry or memorandum, could swear to his belief of its truth, but had entirely forgotten the facts which he recorded, in which the paper thus attested has been received and read in evidence to a jury. A memorandum in respect to a gambling transaction was so received against a criminal. *The State* v. *Rawls*, before cited. Nott, J., as I noticed before of Bayley, J., likens it, in this case, to the forgetting of an attestation, or to a clerk forgetting entries in a merchant's book. So the notes of evidence by counsel were received, though he could not remember the facts. *Rogers* v. *Burton*, Peck, 108, 109, 118. *Clark* v. *Vorce*, 15 Wendell, 193. The entry of a bank clerk, who had forgotten the fact, *Farmers' and Mechanics' Bank* v. *Boraef*, 1 Rawle, 152; of a notary's clerk, who had forgotten the fact he had entered of notice to an endorser, *Haig* v. *Newton*, 1 Rep. Const. Court, 423, 4; of a town clerk,

who had forgotten his entries of charges for penalties, *Corporation of Columbia* v. *Harrison*, 2 id. 213; of a notary, entering a notice which he had forgotten, *Bullard* v. *Wilson*, 5 Mart. Lou. Rep. N. S. 196, with many other cases to the same effect.   There is a class of cases in Pennsylvania, arising out of Lord Kenyon's rule requiring the very words of a deceased witness to be remembered, when his testimony is offered on a second trial, also going far . to illustrate the connection which the law requires between original notes and memory.   Several of them hold that the sworn notes of counsel may be read, giving the substance of what the witness swore.   See also the decision of this court in *Clark* v. *Vorce*, 15 Wendell, 193.   I will only add, that taking the American cases together, they form a commentary upon this kind of evidence clear and copious, by which the views of Nott, J., and Bayley, J., are entirely sustained.   The result is that original entries, attested by the man who makes them, may be read to the jury, though he remembered nothing of the facts which they record.

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

But to make the memorandum or entry competent evidence, the witness must make the entries himself, *Glover* v. *Hunnewell*, 6 Pick. 222, though this rule is not without its exceptions.   Where some of the entries were made by the witness and some by the party, it was held that the evidence should be confined to the witness' own entries, unless he knew the facts set down by the party, and read them over shortly after the transaction, *Beddo* v. *Smith*, 1 Ala. R. 397, 8.   And where a tradesman's clerk entered all goods sold in a waste-book, from his own knowledge, which the tradesman, the plaintiff, copied day by day into the ledger, in presence of the clerk, who checked them as they were copied, the clerk was allowed to use the ledger as an original book—otherwise, said Patteson, J., the original or waste-book should be produced.   He put the production of the original on the legal rule which requires the best evidence.   *Burton* v. *Plummer*, 2 Adolph. & Ellis, 341.   Denman, C. J., said the entries were copied while the transactions were yet fresh in the clerk's memory.   Id.   Great care istaken by

ALBANY,
Jan. 1837.

Merrill
v.
The Ithaca &
Owego Rail
Road Co.

courts to guard against forgery and interpolation in these memoranda. The opposite counsel are entitled to see and cross-examine the witness in respect to them. Per Huston, J., in *Cox* v. *Norton*, 1 Pennsylv. R. 414, 415. *St. Clair* v. *Stevens*, 1 Carr. & Payne, 522. *Rex* v. *Ramsden*, 2 id. 603. Best, C. J., says in *Jones* v. *Stroud*, that he once committed a witness for having a simulated memorandum on the trial, though he immediately explained the matter, candidly admitting that he had drawn it up that morning. While on the stand and apparently searching for the paper in his pocket, he was ordered to hand it to the court, which he did with the explanation.

To return to the case at bar : I collect from the affidavits in the first place, that a considerable share of the entries on the check rolls were made by the plaintiffs ; and such as were, do not appear to have been read by witnesses who knew of the facts entered, immediately after they were set down ; but be that as it may, they have always been under the control of the plaintiffs, and open to fraudulent interpolation. The place of the custody of such insulated memoranda is scanned very closely by many cases. The propriety of this is too obvious to need the support of authority. Besides, not being receivable, as we have seen, in the light of general book accounts of the party, nor, on the same ground as the entries of large and indifferent commercial houses employing many clerks, but coming in and claiming credit upon the footing of simple original entries, it should have appeared that every source of primary evidence had been exhausted. All those who made the entries should have been produced, or it should have been shown that they were dead. Neither appears to have been done. As far as our cases have gone, they confine the excuse for the non-production to the death of the witness, though Massachusetts has received permanent insanity as an equivalent, *Union Bank* v. *Knapp*, 3 Pick. 96, and South Carolina a permanent absence from the state, *Elms* v. *Cheves*, 2 M'Cord, 350 ; *Tunno* v. *Rogers*, 1 Bay, 480.

On the whole, I think the referees in this case exceeded

the bounds of the cases which are most liberal and indulgent in the reception of this kind of evidence, and that the report must be set aside on that ground.