Sutliít, J.
The evidence is voluminous, and it might be difficult for us to determine, from the record, whether or not it warranted the conclusion to which the jury must have arrived, not only that the conduct of Bates, toward the workmen of the plaintiff, was improper, and induced them to leave the work, but also, that the defendants were accountable for *365 such conduct, from the fact that Bates was, at the time, their employee.
We have no difficulty, however, in coming to a conclusion, in relation to the first assignment of error.
The defendants below requested the court to instruct the jury, that if they found the work to have been done under the written contract, previous to the abandonment of the contract by the parties in November, 1850, that the plaintiff could only recover for the actual amount of the work then done, at the contract price. The court refused to so instruct the jury, but instructed them that, if they believed the contract was terminated by the defendants, against the consent of the plaintiff, he would not be confined to the contract price, but might, in the action, recover what the work done was actually worth.
We regard the exception to the charge of the court, as having respect particularly to this part of the charge; and to this point our attention has been more particularly given.
What, then, is the rule of damages, in an action brought upon a cause of action arising under a contract terminated by the other party against the will of the party bringing the action ? And is it true, that the price of services rendered, or goods delivered under a contract fixing, by its terms, such price, is to be in nowise thereby affected, after the contract has been terminated by the other party, against the will of the party performing ?
This precise question, I believe, has not been heretofore decided by this court. In the case of Taft v. Wildman, 15 Ohio Rep. 123, tried in this court at the December term, 1846, the court say: “ In contracts where the precise sum is fixed and agreed upon by the parties, as in many actions of assumpsit and covenant, the jury are confined to that sum.”
In the case of Alder and another, assignees of Berkill, a bankrupt v. Keighley (H. T., 1846), 15 Meeson & Welsby, 117, Bullock, C. B., says : “ But there are certain established rules according to which they (the jury) ought to find; and here, then, is a clear rule — that the amount which would have been received if the contract had been kept, is the measure of dam *366 ages if the contract is broken.” The action below was in general assumpsit, or upon an implied contract, charging the defendant with a breach of the implied contract, and asking a judgment for the resulting damages. To sustain his action the plaintiff proved the amount of services by him rendered for the defendants, at their request, and also the value of the services in the estimation of the witnesses ; and upon such a state of facts, in the absence of its being shown that there was a special agreement between the parties in relation to the same, and the amount to be paid for the services so proved to have.been rendered, the law implies an agreement or promise, on the part of the defendants, to pay so much to the plaintiff as the services were reasonably worth. .Such is presumed to have been the mutual understanding of the parties in the absence of any express promise. But as soon as it is made to appear that there was a special contract between the parties, under which the services were rendered, thé law has respect to the actual contract,-and will not presume or imply a different onethe object of courts being to enforce, not to make or change the contracts of parties.
In this view of the case, whether the contract has been fully performed by the plaintiff, or only partly performed, and prevented by the defendant; to obtain remuneration for the services so rendered, the plaintiff might, under our former practice, either commence an action of general assumpsit to-recover the amount such services were actually worth, or an action of special assumpsit, and recover for a breach of the express contract, under which the services had been performed. The only difference would be, that if the action were commenced upon the expressed contract, the plaintiff might have to prove the terms of the contract, and the rendering of the services according to its terms; whereas, if the action were in general assumpsit the plaintiff would only be required to prove the fact of having rendered the services at the instance of the defendant, and the value of the services; and it would then be incumbent upon the defendants to prove the special contract, to take the case out of the implied -contract. But when the special contract is proved, whether by *367 the plaintiff, or defendant, under which the services were rendered; the special, and not the implied contract must determine the rights and liabilities of the parties arising in regard-to the services. The price having been determined and mutually agreed upon by them, neither of the parties can vary the price so fixed by the contract. Nor, as to the price of the services actually rendered under the contract, while in force between the parties, can it avail the plaintiff, bringing his action to recover therefor, that since the rendering the services, the defendant has put an end to the special contract. The fact would still remain, that the services were rendered under a special contract, and at the price agreed upon, and expressed by the parties.
And if-the action upon the contract so made by the parties, and terminated by the defendants against the will of the plaintiff, be brought to recover damages generally, the same rule would apply, as to the services actually rendered. The party having rendered the services would be entitled to recover at the rate agreed upon and stipulated in the contract between the parties, although of much less value than the price expressed in the contract; and, in like manner, the plaintiff would be restricted to the amount' stipulated in the contract as the agreed price, although actually of much greater value.
The action of assumpsit is termed an equitable action. When brought to recover damages for breach of contract, whether express or implied, it is always for the recovery of money which the plaintiff, by reason of such delinquency of’ duty, on the part of the defendant, is, in equity and good conscience, entitled to demand and receive of him. This is-the argument: it is the duty of parties to perform their contracts ; and where one party has been delinquent, in the performance of his contract, and damage has in consequence resulted to the other party, the party sustaining the damage' has his right of action to recover the damage from the delinquent party. The actual damages resulting to the plaintiff from the breach of the contract by the defendant is the amount §f damage, which the defendant is liable to pay, and which *368 the plaintiff is justly entitled to recover for such delinquency. This damage so occasioned the other party, by the delinquency of the party failing to perform, may consist, partly in a neglect to compensate the other party, for the part performance, and partly in terminating the contract, before fully performed by the other party, 'and preventing his acquiring the ■profit and benefit under it which he would otherwise have derived, and was legally entitled to ; or, the damage may have resulted from either. But it is certain that where there has been a part performance, and that part paid for, under the contract, according to its terms, and the contract has then been terminated wrongfully, by the party so having paid, it can not be that the termination of the contract occasions damage or gives any right of action to the other party in regard to the part so performed and paid for under the contract. The damage in such a case, if any, arises from wrongfully precluding the other party from performing and receiving pay for that part of the contract unperformed on. his part. And the question •of damage, in such case, depends upon the terms of the contract, and circumstances of the case. If the proof shows that the plaintiff might have derived profit from the completion of the contract, on his part, he may be entitled to recover what the proof shows would have been the probable amount of the profit, which he has so lost, as damages to which he is entitled for such termination of the contract. But where the proof shows that the plaintiff, by fully performing, would have realized no profit, but in fact sustained' a loss, he can not in any sense be found to have sustained damage, or entitled to recover any sum as damage for the termination of the contract by the other party.
It is true, that the early English writers, and among which authorities, perhaps, may be mentioned Bacon’s Abridgment and Chitty on Contracts, seem to express the opinion that the contract itself, hardly furnishes any measure of damages; and that the amount of damages is to be left for the .most part in actions on contract, in such cases, in the same manner as in actions of tort, to the discretion of the jury. But the modern authorities are not so,subject to tha*. *369 general principle already stated, that the actual loss of the party, is all for which the law gives him the right to'recover' compensation; and it may be laid down as a rule, in all such cases, that the express contract so existing between the parties, necessarily furnishes the measure of damages, to the extent of the evidence thereby afforded; and to the same extent as in actions brought to recover damages in like cases where the contract continues in force, and has not been terminated, but only neglected and unperformed on the part of the defendant.
Thus, in the case of Farrand v. Bouchell, Harper’s Rep. 83,. the court say, “ in no ease where the action (assumpsit) is for money had and received, goods sold and delivered, or for' work and labor performed, which from the nature of the contract itself furnishes the standard of assessment, are the jury allowed to give more than the amount received with interest, or the value of the articles delivered, or the services rendered.”
The counsel for the defendant in error refer to the case of Clark et al. v. The Mayor of New York, 4 Comst. Rep. 338, as an authority to sustain their claim to recover the full amount of the costs of doing the work which had been done before the contract was terminated. Pratt, J., in delivering the opinion in that case, says : “ It is clear, that under the common counts the plaintiffs can not recover the same amount of damages which they might be entitled to recover in an action for a •breach of the special contract. They must be confined in this-action, either to the price of the work stipulated in the contract, or the actual worth of the work done. When parties-deviate from the t.erms of a special contract, -the contract ‘ price will, so far as applicable, generally be the rule of damages. But when the contract is terminated by one party against the consent of the other, the latter will not be confined to the contract price, but may bring his action for the breach of the contract, and recover all that he may lose bj way of profits in not being allowed to fulfill the contract; oi he may waive the contract, and bring his action on the com mon counts for work and labor, generally, and recover what the work dope is actually worth.” No authorities are referred *370 to by the judge, nor was the expression of these remarks required to sustain the decision of the court. The opinion was pronounced at the December term, 1850, and it is quite possible the case of Clark v. Marsiglia, 1 Denio, 817, decided in the court of errors in that state, in July, 1845, may be the authority relied upon by the judge. In that case the only point before the court, and decided in the case, was the right •of a party doing work once ordered, after a countermand of such order, to recover the agreed price at the time of making the order. The court after deciding that the party ordering the work had a right to countermand the order, remark upon the occasional necessity of the party who employs another to do work under an express contract, to suspend the work and put an end to the contract. And in this connection the court say: “In all such cases the just claims of the party employed .are satisfied when he is fully recompensed for his part performance, and indemnified for his loss in respect to the part left unexecuted.” And this is, no doubt, a correct exposition •of the party’s right of action in such a case, to-wit, recompense for the work done, and remuneration for the profits lost on the work remaining to be done under the contract. But how recompensed for the work done ? Certainly, by being paid precisely the price that both parties have agreed shall be paid, and accepted as its just value.
This case in Denio, then, is no authority; nor are we aware of any authority for the opinion so expressed by the judge in the case of Clark v. The Mayor, that “when the •contract is terminated by one party against the consent of the other, the latter will not be confined to the contract price; ” •and that, if he bring his action on the common counts for work and labor, he may “ recover what the work done is actually worth ; ” and that “ the actual value of the work and materials must be the rule of damages.”
Indeed, there is no intimation by the court in this case of Clark v. The Mayor, of an intention to depart from the former holdings of the court in that state. In the case of Koon v. Greenman, 7 Wend. 121, the question was directly presented to the court. Greenman had agreed to build two *371 stacks of chimneys, etc., for Koon at a certain stipulated price, within a limited time. Greenman commenced the work, but was hindered by the neglect of Koon to perform, on his part, by furnishing materials, etc. Greenman, then, abandoned the job, and sued to recover for the work done. He gave evidence of the actual value of the work done, and by permission of the court was suffered to recover the full value of the work, although on the part of the defendant below, it was insisted that he was only entitled to recover at the rate specified in the contract. The case was brought before the supreme court of New York on this precise question at the May term, 1831, and the following is the opinion of that court upon this point as pronounced by.Southerland, J.: “Where a special contract is rescinded, or performance is prevented by the defendant, and the plaintiff seeks to recover for the work done under the general counts, the defendant may give the special contract in evidence, with a view to lessen the quantum of damages. So far as the work was done under the special contract, the prices specified in it are, as a general rule, to be taken as the best evidence of the value of the work. When it does not appear that the work was rendered more expensive to the plaintiff than was contemplated when the contract was made, or than it otherwise would have been, in consequence of the improper interference of the defendant, or of his neglect, or omission to perform what, by the contract, he was bound to do, the contract price should be held conclusive between the parties,” etc.
It is true, in the case of Merrill v. The Ithaca and Owego Railroad Co., 16 Wend. 586, the court hold that when delay is caused by the willful acts or omissions of the party for whom the work is done, originating in a premeditated design to embarrass and throw obstacles in the way of performance by the other party, who, notwithstanding, proceeds, and bestows his time and labor in attempting the completion of the job, until, in despair, he finally abandons the work, the rule that the special contract must control, as to the rate of compensation, no longer prevails, and the party is entitled to recover under a quantum meruit. But the court say, in that case, “ If one- *372 party, by his conduct or silence, leads another to believe that he is at work for him on certain wages, he is estopped and shall not add to his demand.” And it will be seen from the case itself that the increase of the price was really for other services not included in the contract, or rather for services rendered under different and more unfavorable circumstances than expressed, or contemplated by the parties in their contract. The case is, therefore, no departure from the rule expressed before by the same court in the case of Koon v. Greenman. Eor, in that case, it will be remembered, the court limit the rule to cases “ where it does not appear that the work was rendered more expensive to the plaintiff than was contemplated when the contract was made,” etc.
While it must be admitted that there are cases, and dicta of judges, frequently to be found in the books which seem to sustain the rule given in charge to the jury by the district court, I think the weight of authority, as well as the reason upon which the true rule of damage must necessarily rest, will be found very decidedly opposed to the instruction so given to the jury.
In the case of Haywood v. Leonard, 7 Pick. 181, where the plaintiff was allowed to recover for work done under a special contract, on a quantum meruit, for building the house, not built according to the contract, the jury had been told at the trial to consider what the house was worth to the defendant, and to give that sum in damages; but the court held such instruction wrong, and that the jury should have been instructed to deduct so much from the contract price, as the house was worth less, on account of the departure from the stipulations of the contract. And the same doctrine is held in New York and other states, as applicable in like cases. Indeed, in the case of Clark and others v. The Mayor of N. Y., it was held that where parties deviate from the terms of a special contract to perform work and labor, in an action for work done, the contract price will, so far as applicable, generally be the rule of damages.
But a better illustration of the correctness of the rule ol damage can hardly be found, than is by this case presented *373 in the record before us. The plaintiff brought his action below to recover the damages which he had sustained from the neglect of the defendants to perform their part of the-contract. The only right of action asserted by the plaintiff in his declaration, was to recover the damage which the defendants by their delinquency in regard to the contract, subsisting between the parties, had occasioned the plaintiff. It is true, the plaintiff below only stated the performance of the-services by himself, and complained of the defendants for not having paid him what the law would presume was agreed upon, by the parties. But when an express agreement is proved to-have been made by the parties, the law will not imply one; but looks to the existing contract between the parties.
How, then, stood the case between the plaintiff and defendants -under that contract, as shown by the proof upon the trial; and what damage was McCullough thereby shown to-have sustained from the delinquency or wrongdoing of Doolittle & Chamberlain, in regard to the contract between the parties ?
The written contract required McCullough to do all the excavation at eleven cents per cubic yard. The proof shows-that- he proceeded to do the least expensive part of the work, the surface excavation, which, say the witnesses, might be done at from fifty to thirty-three per cent, of the cost per yard, required to do the remaining part of the work embraced in the contract.- The proof also showed that the plaintiff had been fully paid the eleven cents per cubic yard for all the excavation and work by him done under and according to the terms of the written contract. But the plaintiff, it is true, proves that the excavation which he did under the contract, actually cost or was worth from eighteen to twenty cents per cubic yard; and that Doolittle & Chamberlain had terminated the contract without his consent. In this state of facts the law gives McCullough this equitable action of assumpsit to recover from Doolittle & Chamberlain, the damage which their wrongful termination or disregard of the contract has caused to him, McCullough. But McCullough can only recover the amount which he shows he has lost by such delinquency of *374 Doolittle & Chamberlain. What then is the loss or damage which the proof shows McCullough sustained from the contract having been so terminated? McCullough’s proof is, that it cost from eighteen to twenty cents to excavate, per cubic yard, that part of the job which he did; and all the proof goes to show that the residue of the excavation would ■cost from two to three times the amount per cubic yard, of -that actually excavated. But the written contract, which the plaintiff complains that the other parties terminated, without his consent, required him to do all the excavation at eleven •cents per cubic yard. And if the plaintiff’s claim and proof are entitled to respect, the excavation actually done was worth from eighteen to twenty cents per cubic yard, the residue which the plaintiff has been so prevented from completing at ■eleven cents, would cost from thirty-eight to fifty-seven cents per cubic yard. It is shown by the proof that McCullough was paid more than the full average price of eleven cents per ■cubic yard, for all the excavation he did upon the job; the only damage, therefore, which he could possibly be entitled to recover, was the pecuniary loss he sustained by being thus prevented from completing the residue of his job at a cost of from thirty-eight to fifty-seven cents per cubic yard, and receiving therefor eleven cents per cubic yard. This is perfectly evident in fact; and it also results from making the •contract the measure of damages to the same extent intended by the parties, both at the commencement and performance of the work. And only by reference to the contract can the true amount of damages suffered by the plaintiff be ascertained.
The instruction given by the court below to the jury, that the plaintiff was entitled to recover the actual cost of the services rendered, regardless of the price fixed by the express ■contract, would allow the plaintiff to recover a large sum of money from the defendants without consideration and without cause. Indeed, it would allow the plaintiff not only to recover, without any cause of action being shown, but, in. fact, his proof showed that the termination of the contract complained of, had, in fact, occasioned him no loss, but had actually saved *375 him from ruinous loss ; and to recover damages when he had sustained none, but had really derived a benefit and gain.
The judgment of the district court must therefore be reversed.
Scott,' C.J., and Peck, Gholson and Brinkerhoee, J J. concurred.