(96 App. Div. 441.)
STATE BANK OF PIKE v. BROWN et al.

(Supreme Court, Appellate Division, Fourth Department.  July 6, 1904.)

1. BANK CASHIER—EMBEZZLEMENT—ACTION ON BOND—BOOKS AS EVIDENCE.
    The books of a bank are competent, in an action on the bond of its cashier, to show his embezzlement, and the amount thereof; it being shown that all the entries which the evidence indicates were false were made by him; it being proved by whom the entries were made in the books, and each of the persons who made entries therein, except the cashier, who was a fugitive from justice, and another, who was dead, having testified that the entries made by them were correct; and all the entries made by deceased being shown to have been made in the regular course of business, and many of them being shown to be correct.

Appeal from Special Term, Wyoming County.

Action by the State Bank of Pike against George M. Brown and another.  From a judgment for plaintiff, defendants·appeal.  Affirmed.

The action was commenced on the 22d day of April, 1897, to recover the amount alleged to have been embezzled from the plaintiff by one Earle S. White while in its employ as cashier, and which it is claimed was secured to it by a bond executed by said White as principal, and by the defendants and two others as sureties, and upon which this suit is brought.  The action was first tried in June, 1897, before a referee duly appointed for that purpose, who reported in favor of the plaintiff substantially for the amount demanded in the complaint, and judgment was entered accordingly.  The defendants appealed to the Appellate Division, Fourth Department, where such judgment was in all things affirmed.  29 App. Div. 627, 52 N. Y. Supp. 1150.  From such judgment of affirmance the defendants appealed to the Court of Appeals, where the same was reversed, and a new trial ordered, with costs to appellants to abide event.  165 N. Y. 216, 59 N. E. 1, 53 L. R. A. 513.  Thereupon such new trial was had, and resulted in the judgment from which this appeal is taken.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

C. S. Cary, for appellants.
G. S. Van Gorder, for respondent.

McLENNAN, P. J.  The plaintiff is a banking corporation organized on the 12th day of April, 1890, pursuant to the laws of this state, and on said date took over the entire assets and business of the private banking firm of Adams, Weed & Co., and since that time said plaintiff has been conducting a regular banking business in the village of Pike, Wyoming county, N. Y.  One Earle S. White had been the cashier of Adams, Weed & Co., and upon the organization of the plaintiff was employed in the same position with it, and so continued until August 15, 1896, during which time he had principal charge, custody, and control of plaintiff's business, books of account, and assets.  From said 12th day of April, 1890, until January 2d, 1893, the plaintiff had no security for the faithful discharge of the duties of White as cashier; but on said last-mentioned date the bond following was executed by White as principal, and by the defendants and two others as sureties, viz.:

"Whereas, the above-bounden Earle S. White has been elected cashier of The State Bank of Pike, located and doing business in the Village of Pike, N. Y., by reason whereof divers sums of money, goods and chattels, the property of said bank, will come into his hands.

"Now, therefore, the condition of the above obligation is such that if the said Earle S. White, his executors or. administrators or assigns, at the expiration of his term of office upon request to him or them made, shall make or give unto the said State Bank of Pike, or its agents or attorney, a just and true account of all such sums of money, goods or chattels, and other valuable things as have come into his hands, charge or possession, as Cashier of the said Bank, and shall pay over and deliver to his successor in office, or such other person as may be duly authorized to receive the same, all such sums of money, goods and chattels, and other valuable things as shall appear to be in his hands and due by him to the said bank, then the above obligation to be void, else to remain in full force and virtue.

"Signed with our seals. Dated this second day of January, 1893 (one thousand eight hundred and ninety-three).

"[Signed] ·                                    Earle S. White.
                                               "Henry K, White.
                                               "W. O. Leland.
                                               "S. N. Wood.
                                               "George M. Brown."

On August 15, 1895, White ceased to be cashier for the plaintiff, and left the village of Pike, where he had resided during all the times in question. He remained away about three months, and upon his return the plaintiff—it having in the meantime discovered evidence of his alleged defalcation and embezzlement—demanded from him that he account with it as cashier, and straighten his matters with it, which he refused to do, and has never since done.

The plaintiff claims, as appears by its complaint and bill of particulars, that while White was its cashier, and after the bond above set forth was executed, he embezzled and misappropriated its moneys, and therefore became indebted to it as follows:

| | |
|---|---:|
| Bills discount account | $223 04 |
| In sundry ledger account | 361 08 |
| Certificates of deposit account | 1,283 00 |
| Total | $1,867 12 |

Two questions are presented by this appeal: First, does the evidence fairly tend to establish, as against the defendants, that White; their principal, embezzled and misappropriated the funds and property of the plaintiff? And second, if so, are the defendants legally liable upon their bond for the amount so embezzled and misappropriated?

As to the first question: Concededly there is no evidence tending to show that while White was cashier he took any particular sum belonging to the plaintiff, and appropriated the same to his own use. In the nature of things, it would be impossible to prove such a transaction. Common experience demonstrates that the bank cashier who embezzles or· defaults does not pursue that course, which would lead to sure and immediate detection, but instead he manipulates the entries upon the books in such manner that his embezzlement or defalcation can only be discovered, if at all, by a detailed and exhaustive examination of the books. As pointed out in the opinion of the learned referee, an examination of plaintiff's books, which were introduced in evidence, very conclusively shows that White embezzled, of funds belonging to it, an amount even in excess· of that for which judgment was awarded. As to "bills discounted," it appears by the evidence of Mr. George H. Chase, an expert bank accountant, that he made a thorough examination

of plaintiff's books covering the period from January 2, 1893, when the bond in question was executed, to August 15, 1895, when White ceased to be plaintiff's cashier. The witness testified that on said last-mentioned date, as appears by the books of the bank and by the daily statement register, which was in the handwriting of White, plaintiff had discounted, and should have had on hand, bills and notes amounting to the sum of $91,071.29, whereas in fact it only had of such paper $90,-848.25, and that by reason thereof the plaintiff sustained loss to the amount of $223.04. The witness also points out several false entries in said account, all of which are in the handwriting of White. For instance, under date of February 25, 1895, there is entered on the journal in White's handwriting a charge of bills discounted, debtor balance, of $75.72, but there is no corresponding entry in the discount register. In each instance where a discrepancy exists in such account, the false entry is made by White. The testimony, however, does not show the precise item or items which made up the total deficiency in the amount. That was only arrived at by an examination of both sides of the entire account. Again, as to "certificate of deposit account," the witness testifies that, as appears by said account, the plaintiff, through its cashier, White, between the 27th day of September, 1893, and February 1, 1895, both inclusive, issued four certificates of deposit, aggregating $1,173, and that White twice charged the plaintiff with the payment of all of those certificates. To illustrate: Under date of March 12, 1894, certificate No. 2,158, for $100, is charged as having been paid on that date, in White's handwriting. Under date of December 23, 1894, the same certificate is again charged as having been paid, and also in White's handwriting. The same is true as to each of the other three certificates. Between the dates mentioned, White made false footings and entries in said account to such amount that the total amount of such account of which the plaintiff was defrauded by White was $1,283, no part of which White has accounted for or paid over to it. It appears that substantially all the false entries pertaining in any manner to this account were in White's handwriting.

With reference to the "sundry ledger account," which was principally kept by White, it appears, as shown by such account, that on August 14, 1895, the plaintiff owed sundry depositors $12,359.80. White stated the amount of such indebtedness, in his own handwriting, to be $11,998.72; showing a discrepancy of $361.08, which amount the plaintiff has been compelled to pay to the parties entitled thereto. With reference to this account it is true that the specific items which make up the deficiency are not proved; but White made the false entry in the daily statement register, and, as said by the learned referee, "evidently for the purpose of concealing this deficiency and forcing a balance." The deficiencies in these three accounts, with interest thereon, make up the amount of damages for which judgment was rendered against the defendants under their alleged obligation upon the bond in question.

It is urged by the able counsel for appellants that, even although the books of the bank would have been competent to establish its claim against White, they were not competent to establish a liability against the defendants under the bond in suit. It is fair to say that although many of the entries contained in the books were made by White person-

ally, and all of the entries which the evidence indicates were false were made by him, many entries contained in said books were made by employés of the plaintiff other than White, and that the entries or books, as a whole, were considered by the witnesses in reaching the balances which they did, and in determining the amount of White's defalcation. It therefore becomes important to determine whether or not the books, as a whole, were properly received in evidence. Upon the former trial the books were thus received, simply upon the proof having been made that they were the books of the bank, kept in the ordinary way and in the regular course of business. This was held to be error by the Court of Appeals. 165 N. Y. 216, 59 N. E. 1, 53 L. R. A. 513, supra.

Upon this trial the plaintiff proved that all the entries made in his books between January 2, 1893, the date of the bond, and August 15, 1895, when White ceased to be its cashier, were made either by White, its cashier, Mr. Van Gorder, its president, Miss Franc Banfield, the bookkeeper, Mr. Clayton A. Metcalf, its teller, or Miss Mainwaring, an assistant bookkeeper. Each of such employés gave evidence to the effect that the entries made by them in the books, respectively, were correct, except White, who was a fugitive from justice and without the jurisdiction of the court, and Miss Banfield, who was dead at the time of the trial; but all of the entries made by her were shown to have been made in the regular course of business, and many of them were shown to be correct, and, in addition, it was proven that settlements had been made from the books, and that they had been found to be correct.

As we interpret the opinion of the Court of Appeals upon the decision of this case, such proof having been made, the books were competent evidence as against the defendants. Upon principle, we think it ought to be so held, else the giving of a bond by a bank cashier for the purpose of protecting the bank against his embezzlement or defalcation is an idle ceremony.

The learned referee, in the opinion written by him, has recited with considerable detail the evidence which supports the conclusion that White embezzled and misappropriated the funds of the plaintiff to an amount at least equal to the sum awarded the plaintiff as damages by the judgment appealed from, and with such conclusion we are entirely satisfied. The referee also calls attention to and cites the authorities which, in our judgment, establish that the plaintiff's books, under the proofs in this case, were competent evidence for the purpose of establishing the embezzlement or defalcation of White as against the defendants, and also to the authorities which hold that, under the circumstances disclosed by the evidence, the defendants are liable to the plaintiff for the amount of such defalcation or embezzlement, and we therefore deem it unnecessary to farther advert to the testimony or to such authorities. Besides, all the questions now presented were before the Court of Appeals when the former appeal was considered by that court, and we think it should be assumed that, if the learned court were of the opinion that upon the merits the plaintiff could not succeed, it would have so indicated, and not have reversed the judgment solely upon the ground of error in the admission of evidence. At all events, we are of the opinion that the error pointed out by the Court of Appeals

as having been committed upon the former trial has been fully obviated upon this trial, and that the record of the trial now presented is free from error prejudicial to the defendants, and that upon the merits the plaintiff is entitled to recover, and therefore that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

---

## GAUNTLETT et al. v. CAMERON et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. PLEDGES—ENFORCEMENT—PROCEEDS AND SURPLUS.

> In a suit by a trustee to foreclose the pledge of certain securities, and to procure a determination of conflicting claims to the surplus, involving the ownership of certain stock, evidence considered, and *held* insufficient to sustain a finding that the certificate was assigned to plaintiff by a claimant as an independent and subsequent collateral as surety for the debtors, and that he was entitled to a superior equity in the distribution of the surplus.

> Houghton, J., dissenting.

Appeal from Special Term, Tompkins County.

Action by John C. Gauntlett, as trustee for Mary C. Gauntlett and others, against Frederick W. Cameron, as assignee, and others, to foreclose a pledge of securities, and to procure a determination of conflicting claims to the surplus. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. M. Lawson (Judson S. Landon and Robert J. Landon, of counsel), for appellant Cameron.

George A. Strong (S. D. Halliday, of counsel), for appellant Whitehead.

William Nelson Noble, for respondent John C. Gauntlett.

Bissell, Carey & Cooke (Martin Carey and James McC. Mitchell, of counsel), for respondent Frank S. McGraw.

CHASE, J. Defendants Henry Patton and David H. Patton for several years prior to May 8, 1893, were copartners doing business principally as wholesale dealers in lumber. The defendant Thomas H. McGraw had for many years prior to that date been engaged as a manufacturer and wholesale dealer in lumber. Said Henry Patton and Thomas H. McGraw had for many years been personal friends, and each had great confidence in the other. The business dealings of Patton & Co. and of said Thomas H. McGraw resulted in many financial transactions between them, and they also respectively became financially interested in numerous other business enterprises which they promoted and controlled. The partnership and said Thomas H. McGraw each made and indorsed notes for the accommodation of the other. There were a large number of such accommodations, and many renewals thereof. They became equally interested in the stock of the