## COURT OF APPEALS.

SPENCER COLE agt. JAMES JESSUP, impleaded, &c.

Any officer or agent of a bank, or any private citizen, may, if authorized by the holder, demand payment of a note, and give notice of its non-payment, with the same effect as if done by a notary. And where a note is payable at the bank, the possession of it by a teller or other clerk of the bank, not a notary, is sufficient evidence of his authority to make the demand and give the notice. (18 *John.* 230.)

Where the teller of a bank testified that he made the entries and memoranda in

a book, on a certain day, of the presentment of a note payable at the bank, and gave notice of non-payment, as the clerk of his brother, who was a notary public; that he had kept a memorandum of notes protested in a book kept for the purpose; that his brother made none of the entries himself, but the memorandum book was kept exclusively by the witness—his brother furnishing him with notarial certificates, signed in blank, which the witness filled up as occasion required; that he was in the daily habit of protesting notes; that it was his usual practice to make the entries in the memorandum book the same day that he delivered the notices; that he had no recollection of making the entries in this case; but that *he knew they would not have been made if he had not done the acts* there stated; that he was positive, from the memorandum, as to such acts,

*Held*, that this evidence was properly admitted on the trial, to prove the protest of the note upon which the action was brought. The *official character* of the *notary* had nothing to do with its reception. It was not a case where, in order to make the certificate of the notary evidence *per se*, under the statute, of the facts stated in it, it were necessary to show that the *notary* performed the duties *in person*, as decided in *Onondaga County Bank* agt. *Bates*, (3 *Hill*, 53.)

If a plaintiff puts in two distinct and separate replications to the plea of the statute of limitations, and is successful upon either, the defence set up in the plea is overthrown. One sufficient answer to a single pleading is enough.

Although the statute of limitations, as enacted in the Revised Statutes, (2 *R. S.* 297,) has been repealed, it is substantially re-enacted in the Code. (§ 100.)

The provision in the Revised Statutes is as follows:—" If, at the time when any cause of action, specified in this article, shall accrue against any person, he shall be out of this state, such action may be commenced within the times herein respectively limited after the return of such person into this state: and if, after such cause of action shall have accrued, such person shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." (§ 27.)

The question is, Is an allegation by a defendant, that the defendant " returned publicly to this state," sufficient? Or must he go further, and allege that the return was so public, and under such circumstances, as to give the creditor an opportunity, by the use of ordinary diligence and due means, to have commenced his suit? (10 *John*. 464.)

*Held*, that an allegation, substantially in the language of the statute, that he " returned publicly to this state," was sufficient—adopting the reasoning upon this point contained in the decision of the case of *Ford* agt. *Babcock*, (2 *Sand. S. C. R.* 518.) [*This decision, therefore, overrules the case of Fowler* agt. *Hunt*, 10 *John*. 464; *and this case, as reported in* 2 *Barb*. 309, *uoon this question.*]

*Held*, that the latter branch of section 27, of the statute, may be applicable to cases where the debtor resides out of the state at the time when the cause of action accrued. (*Approving of the decision in the case of Didier* agt. *Davison*, 2 *Barb. Ch. R.* 477; *and Ford* agt. *Babcock, supra, upon this point, and*

*overruling the case of Randall* agt. *Wilkins*, 4 *Denio*, 577; *and this case, supra.*)

Also *held*, that under the said latter branch of section 27, in cases to which that branch of the section applies, the aggregate of the successive absences, and not the first absence only, is to be deducted from the time in which the statute runs. (*Approving of the decision in the cases of Didier* agt. *Davison, and Ford* agt. *Babcock, supra, and Burroughs* agt. *Bloomer*, 5 *Denio*, 532, *upon this point; and overruling the case of Dorr* agt. *Swartwout*, 5 *N. Y. Legal Observer*, 172, *and this case, supra.*)

*December Term*, 1854.

THIS action was commenced prior to the enactment of the Code of Procedure. It was brought against the defendant as the endorser of a promissory note for $808.71, made by one Schriver, payable at the Ogdensburgh Bank six months after date, and dated September 20th, 1834.

The defendant, Jessup, pleaded, first, the general issue, and secondly, the statute of limitations. The material portion of the latter plea was in these words, viz.: " That the said several supposed causes of action in the said declaration mentioned, if any such there were, or still are, did not, nor did any or either of them, accrue to the said plaintiff at any time within six years next before the exhibiting of the bill of the said plaintiff."

To this plea of the statute of limitations, the plaintiff, by special leave of the court, put in two replications, viz. :

1. That, at the time when the causes of action accrued, the said Jessup " was out of the state of New-York, to wit, at Brockville, in the province of Canada, to wit, on the 23d day of March, 1835, and did not return into this state until the first day of January, 1840," and that the action was commenced within six years next after such return.

2. That after the said causes of action accrued, to wit: on the first day of May, 1835, the said Jessup departed from and resided out of the state, and continued so to reside for the space of five years next after the said 1st of May, 1835, and that the suit was commenced within *eleven years* next after the causes of action accrued.

Upon the first of these replications the defendant took issue. To the second he rejoined : That, after the departure in that

replication alleged, to wit, on the first day of May, 1837, he, the said Jessup, "*returned publicly* to this state," and that the · action was not brought within six years next after such return.

To this the plaintiff sur-rejoined, that after the return in the rejoinder alleged, to wit, on the same day, the said Jessup again departed from, and resided out of this state, and continued absent from, and residing out of the state, to wit, in Canada, for the space of four years, and that the suit was commenced *within six years next after the causes of action accrued, exclusive of the time the said Jessup was absent from and residing out of the state.*

The rebutter alleged, in substance, that the said Jessup, at the time the causes of action accrued, and at the time of his first return as alleged, resided out of the state, and continued so to reside until the first day of September, 1837, when he again "*returned* publicly to this state," and that the action was not brought within six years next after the last mentioned return.

The plaintiff demurred to the rebutter, assigning for causes,

1. That it did not deny the absence of Jessup as alleged; nor that the suit was commenced within six years next after the causes of action accrued, exclusive of the time of such absence; and,

2. That the allegation, that Jessup had "*returned publicly*" to the state, without averring that he resided, or remained, a certain length of time, is immaterial and insufficient.

Upon this demurrer the supreme court gave judgment for the plaintiff—holding *all the pleadings*, after the replication, to be bad in substance.

The issue in fact, joined upon the first replication to the plea of the statute of limitations, then came on to be tried; and, upon the trial, the execution of the note by Schriver, the maker, and its endorsement by the defendant, Jessup, was duly proved.

To prove presentment, demand, and notice of non-payment, the plaintiff then called *John D. Judson* as a witness, who testified, that in March, 1835, he was teller in the Ogdensburgh Bank; that he recognized the note in question as one that had been in the bank, by certain marks upon its back; that he had himself presented the note for payment on the 23d March, 1835;

and, there being no funds of the maker in the bank, he had, on that day, mailed a notice of non-payment, addressed to the defandant, Jessup, at his place of residence in Canada.

Upon *cross-examination*, the witness stated, that he had no recollection of the facts, aside from certain books and papers which he had examined; and that, after such examination, he could not say that he had any remembrance of the facts. He then stated that he had made the entries and memoranda to which he referred, as the clerk of his brother, David C. Judson, who was a notary public; that he had kept a memorandum of notes protested in a book kept for the purpose; that his brother had made none of the entries himself, but the memorandum book was kept exclusively by the witness: his brother furnishing him with notarial certificates signed in blank, which the witness filled up as occasion required.

The witness further testified, that he was in the daily habit of protesting notes; that it was his usual practice to make the entries in the memorandum book the same day that he delivered the notices; that he had no recollection of making the entries in this case; but that he knew they would not have been made if he had not done the acts stated in the memorandum; and he testified positively to those acts, basing his testimony entirely upon the memorandum. It appeared that David C. Judson was living at the time of the trial.

This proof having been given, the counsel for the plaintiff requested the witness to read the entries to the jury, which was objected to by the defendant's counsel, but permitted by the court, as showing the grounds upon which the witness based his testimony.

To this decision the counsel for the defendant excepted. The jury, under the charge of the court, found a verdict for the plaintiff of $1,614.89—the amount of the note, and interest.

A bill of exceptions was tendered and signed, upon which a motion was made in the supreme court, at general term, for a new trial, which was denied; and thereupon a judgment was entered for the plaintiff for the amount found by the jury, and costs.

Cole agt. Jessup, impleaded, &c.

From this judgment the defendant appealed to this court.

N. Hill, jr., *for appellant*.

Joshua A. Spencer, *for respondent*.

By the court—Selden, J. The record in this case presents two main questions: one upon the exception to the decision of the judge, permitting the entries made in the memorandum-book-kept by the witness, Judson, to be read in evidence to the jury; the other upon the demurrer to the rebutter.

In regard to the point raised upon the bill of exceptions, it is to be observed, that the official character of the notary had nothing whatever to do with the reception of the evidence. The circumstance that the witness, Judson, professed to act, in presenting the note for payment, and in giving notice to the endorsers, as the clerk of his brother, the notary, neither added to or detracted from the force of his acts. Any officer or agent of a bank, or any private citizen, may, if authorized by the holder, demand payment of a note, and give notice of its non-payment, with the same effect as if done by a notary. The note in this case was payable at the Ogdensburgh Bank, of which the witness was teller; and the possession of the note by him was sufficient evidence of his authority to make the demand and give the notice. (*Bank of Utica* agt. *Smith*, 18 *John. R.* 230.)

The memorandum in question was offered, in connection with the oral testimony, as evidence, not that the notary had performed the service, but that it had been done by the witness. The entries were made, by the witness himself, at about the time the acts were done, and in the usual course of his employment as clerk. The *original* entries were produced, and were fully verified by the witness, who testified, that *he knew they would* not have been made, if he had not done the acts. This brings the case clearly within the rule established in the cases of *Merrill* agt. *The Ithaca and Owego Railroad Co.*, (16 *Wend.* 586,) and *Bank of Monroe* agt. *Culver*, (2 *Hill*, 531,)

unless the objection urged by the defendant's counsel is well founded.

He insists that the entries in this case are not mere business entries, made by a clerk or agent in the performance of his ordinary duties; but that they purport to be made by a *public officer*, clothed by law with certain powers, whose written memoranda are, under certain conditions, made evidence of his official acts; and cites the case of *The Onondaga County Bank* agt. *Bates*, (3 *Hill*, 53,) and the authorities there referred to, as showing that a notary cannot delegate his powers to a clerk or deputy; and that the attempt to do so is censurable: from which he argues, that the entries in this case are to be regarded as made in violation of law, and not in the ordinary course of business; and that this illegal taint strips them of the credit which attaches to such as are legitimately made.

This argument, however, is based upon a misapprehension of the scope of the authorities referred to. The case of *The Onondaga County Bank* agt. *Bates* simply decides, that in order to make the certificate of a notary evidence *per se*, under the statute, of the facts stated in it, it is necessary that he should perform the duties in person; and that if he employs an agent for the purpose, his acts are deprived of their *official* character, and become subject to the ordinary rules of evidence.

The English authorities cited, simply condemn the employment of a clerk to perform those duties to which the official character of the notary is essential: such as the protesting of a *foreign* bill of exchange; but contain no intimation against the performance, through an agent, of acts which may properly be done by any private citizen.

As it is entirely immaterial to the validity of the acts themselves in this case, whether they were performed by the witness as the clerk of the notary, as the agent of the bank, or as a private individual; so, I apprehend, is it unimportant to the credit of the entry whether it was made in the books of the notary, in those of the bank, or in the private memorandum-book of the witness. There can be no doubt, therefore, that the memorandum in this case was properly received in evi-

Cole agt. Jessup, impleaded, &c.

dence, and that the decision of the supreme court upon the bill of exceptions was right.

This conclusion is decisive of the case. The plaintiff having, by leave of the court, put in two distinct and separate replications to the plea of the statute of limitations, if he is successful upon either, the defence set up in the plea is overthrown.

The verdict, therefore, upon the issue joined upon the first replication being sustained, it follows that the judgment must be affirmed, whatever disposition may be made of the demurrer. This consequence is resisted by the defendant's counsel, but it admits of no doubt whatever. One sufficient answer to a single pleading is enough. If the second replication were stricken out entirely, or adjudged frivolous, it could not affect the first. The plaintiff would still be entitled to judgment upon his verdict, sustaining that replication.

It is not indispensable, therefore, to the disposition of the case, that this court should pass at all upon the issue of law. But, as this issue presents questions of some moment as to the construction of the statute of limitations, in regard to which the decisions are conflicting, it seems expedient, since these questions are directly involved in the case, that this court should express its opinion upon them. Although the statute upon which the questions arise has been repealed, it is substantially re-enacted in the Code. (§ 100.)

The principal questions presented by the demurrer, in this case, arise upon the defendant's rebutter, although the previous pleadings on both sides are assailed. The rebutter is alleged to be bad for two reasons:

1. Because it does not show that the defendant returned to this state under such circumstances that the creditor might, with due diligence, have commenced his suit: and,

2. Because it in no way answers the material allegation in the sur-rejoinder, that the suit was commenced within six years next after the causes of action accrued, exclusive of the time of the defendant's absence from, and residence out of, the state;

but tenders an issue as to the return of the defendant within the state, which is wholly immaterial.

The provision of the statute, with reference to which the pleading in question was framed, and upon which the questions upon the demurrer depend, is as follows :—

"If, at the time when any cause of action specified in this article shall accrue against any person, he shall be out of this state, such action may be commenced within the times herein respectively limited, after the return of such person into this state ; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." (2 *R. S.* 297, § 27.)

The first branch of this section is taken from our statute of limitations in force prior to the revision of 1830. (1 *R. L. of* 1813, 186, § 5.)

Under this provision of the former statute it was held, that the return of an absent debtor into the state, in order to come within the terms of the act, and to cause the limitation of the time for commencing the action to begin to run, must be so "public, and under such circumstances, as to give the creditor an opportunity, by the use of ordinary diligence, and due means, of arresting the debtor." (*Fowler* agt. *Hunt,* 10 *John.* 464.)

The allegation here is, that the defendant "returned publicly to this state." It is insisted by the plaintiff that this is not enough ; but that the defendant should have gone further, and alleged the circumstances necessary to bring the case within the decision in *Fowler* agt. *Hunt.* The supreme court so decided, and held the rebutter to be bad for this reason.

The superior court in the city of New-York, in the case of *Ford* agt. *Babcock,* (2 *Sandf. S. C. R.* 518,) has decided directly the reverse. The decision of the supreme court in this case, which is reported in 2 *Barbour's S. C. R.* 309, was referred to and considered by the superior court in deciding the case of *Ford* agt. *Babcock.* The reasoning of Judge DUER, in the latter case, upon this point, seems to me conclusive, and I there-

fore adopt it. His argument is substantially this : That whenever a statute gives a cause of action or defence, it is sufficient, in declaring upon or pleading the statute, to follow the words of the act; and that where the courts, in construing a statute, have put an interpretation upon it which differs from, or extends and enlarges the literal import of its language, they will, of course, be bound to give the same interpretation to the same words, when used in a declaration or plea founded upon the statute.

And again : That it having been held in several cases, viz., *Fair* agt. *Roberdean*, (3 *Cranch*, 174,) *Fowler* agt. *Hunt*, (10 *John.* 464,) *White* agt. *Bailey*, (3 *Mass.* 271,) and *Little* agt. *Blunt*, (16 *Pick.* 369,) that when a defendant pleads a return under the statute, he is bound to prove *all* the facts necessary, to show the return to have been such as the statute contemplated, although *none* of these facts are specifically averred, it follows that the plea cannot be defective for the want of such averment; that if the averment would add nothing to the proof which the defendant is under obligation to produce, it cannot be necessary to the validity of the plea.

The conclusion from this reasoning is inevitable, that the rebutter is, in this respect, sufficient; and that the decision of the supreme court upon this point was erroneous.

The next question is, whether the rebutter is bad, because it does not, in any way, answer the allegation in the sur-rejoinder, that the action was commenced within six years after the causes of action accrued, *exclusive of the time* of the defendant's absence from, and residence out of, the state.

This question depends mainly upon the accuracy of the construction of the statute upon which the sur-rejoinder is based. We shall have a clear view of the opposite construction put upon the statute in question by the defendant in the rejoinder and rebutter upon the one hand, and by the plaintiff in the sur-rejoinder on the other, if we recur for a moment to the series of pleadings terminating in the demurrer.

*Plea*, that the causes of action did not accrue within six years next before, &c.

*Replication*, that after the causes of action accrued, to wit, on the 1st of May, 1835, the defendant departed from, and resided out of, the state for the space of five years; and that the action was commenced within six years, &c., deducting the time of such absence.

*Rejoinder*, that after the departure alleged in the replication, to wit, on the 1st of May, 1837, the defendant *publicly returned* into the state, and that the action was not commenced within six years after such return.

This rejoinder assumes, that the latter branch of § 27 (2 *R. S.* 297,) provides for only a single absence; and that, where a debtor has once left the state after the accruing of the causes of action, and returned, the action must be commenced within six years after such return, without regard to any subsequent absence.

*Sur-rejoinder*, that after the return mentioned in the rejoinder, to wit, on the same day, the defendant again departed from and resided out of the state for the space of four years, and that the action was commenced within six years next after the causes of action accrued, exclusive of the time of the defendant's absence, &c.

The sur rejoinder is based upon a construction of the statute directly opposite to that assumed by the rejoinder, viz., that the latter branch of § 27 (2 *R. S.* 297,) provides for the case of successive absences, and that, when they are repeated, not only the first, but the aggregate of the whole is to be deducted.

*Rebutter*, that *at the time of the accruing* of the causes of action, and at the time of the return mentioned in the surrejoinder, the defendant resided out of this state; that afterwards, to wit, on the 1st of September, 1837, he *returned publicly* into the state, and that the action was not commenced within six years after such last mentioned return.

The allegation in the rebutter, that the defendant resided out of the state when the causes of action accrued, seems to have been intended to raise the question whether the latter branch of § 27 applies at all to such a case. Beyond this the rebutter is a mere reiteration of the ground taken in the rejoinder.

From this brief review of the pleadings, it will be seen that

two questions are presented in regard to the construction of the section of the statute in question, viz.: 1. Whether the latter branch of the section can have any application to a case where the debtor resides out of the state at the time when the cause of action accrued; and, 2. In a case to which this branch of the section does apply, whether the aggregate of successive absences, or only the first absence, is to be deducted.

Both these questions have been presented to the courts upon several occasions, and the decisions upon them are irreconcilably conflicting. The first arose in the case of *Randall* agt. *Wilkins*, (4 *Denio*, 577.) The court in that case held, that where the debtor resided out of the state when the cause of action accrued, the statute would commence running whenever he should come openly and publicly into the state, so that the creditor, by the exercise of ordinary diligence, might cause process to be served upon him, and that having once commenced, it would continue to run, although the debtor should immediately leave the state, and continue abroad until the limitation had expired.

The view taken by the court in this case seems to have been, that the first and second branches of § 27 were intended to provide for entirely distinct classes of cases, the first being intended as a re-enactment, without modification, of that portion of the former statute from which it was copied; and the second designed to be limited to cases where the debtor is within the state when the cause of action accrued.

But this case stands not only wholly unsupported in this view of the statute, but directly opposed to the other cases in which the question has arisen. In *Didier* agt. *Davison*, (2 *Bar. Ch. R.* 477,) Chancellor WALWORTH puts a construction upon this section entirely adverse to that adopted in *Randall* agt. *Wilkins.* It is true, that the point does not appear to have been seriously contested in that case; but in the case of *Ford* agt. *Babcock*, (2 *Sandf. S. C. R.* 518,) the subject was very fully considered; and it is, I think, there conclusively shown, that the construction adopted in *Randall* agt. *Wilkins* is irreconcileable with either the letter or the spirit of the statute. So far, therefore,

as the validity of the rebutter rests upon that construction, it must be held to be defective and bad.

The only remaining question is, whether successive absences can be accumulated, and the aggregate deducted under the latter branch of § 27, in cases to which that branch of the section applies. There is but a solitary decision, aside from that of the supreme court in this case, upholding the negative of this question, viz., that of Mr. Justice NELSON in the case of *Dorr* agt. *Swartwout*, (5 *N. Y. Legal Observer*, 172.) This was the only authority cited by the supreme court to sustain the view taken by the statute in this case. But the case of *Dorr* agt. *Swartwout* is in direct conflict, not only with the opinion of Chancellor WALWORTH, in the case of *Didier* agt. *Davison*, *supra*, and with that of the superior court of New-York in the case of *Ford* agt. *Babcock*, but also with that of the late supreme court in the case of *Burroughs* agt. *Bloomer*, (5 *Denio*, 532.)

In the last two of these cases, the case of *Dorr* agt. *Swartwout* is expressly referred to and disapproved; and in the case of *Ford* agt. *Babcock*, its construction of the statute is, I think, successfully overthrown by a process of cogent reasoning drawn from a review of the evils which existed under the former law, and the apparent design and object of the new provision. I have no hesitation, therefore, in adopting the construction, in this respect, given to the statute in the three cases last referred to, rather than that adopted in *Dorr* agt. *Swartwout*.

It follows from this that the sur-rejoinder is good, the rebutter bad, and that the plaintiff is entitled to judgment upon the demurrer. The supreme court held the sur-rejoinder to be bad as well as the rebutter; but, as it also held the rejoinder bad, its conclusion, although resting upon an entirely different view of the statute, was the same as that here arrived at.

Judgment of the supreme court affirmed.

TOMPKINS agt. ACER.

ISAAC S. SMITH, [L. S.]